J.H. STORY, M.D., Appellant
(Contestee),

v.

**WYOMING STATE BOARD OF
MEDICAL EXAMINERS,**
Appellee (Complainant).

No. 85–281.

Supreme Court of Wyoming.

June 17, 1986.

R. Scott Kath of Copenhaver, Kahl & Kath, Powell, for appellant (contestee); Van Graham (argued).

A.G. McClintock, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., and Richard E. Dixon (argued), Asst. Atty. Gen., for appellee (complainant).

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

This appeal is from an order revoking appellant's medical license after a hearing before the Wyoming State Board of Medical Examiners.

We affirm.

The questions presented by appellant for our determination are whether the findings of the Board are supported by substantial evidence; whether the Board complied with requirements of law; and whether the Board's findings and conclusions are arbitrary, capricious, and an abuse of discretion.

The Wyoming State Board of Medical Examiners received written complaints from female patients that appellant had inserted his penis into their vaginas during pelvic examinations. Following an investigation, there was, pursuant to § 33–26–130, W.S.1977, Cum.Supp.1985, an interview with appellant. The parties were unable to arrive at a satisfactory resolution of the complaints. A contested-case hearing was set at which appellant was ordered to show cause why his license to practice medicine should not be suspended, revoked, or restricted, or other disciplinary action taken. At the conclusion of the hearing, the medical board found that appellant was guilty of unethical and unprofessional conduct toward MA, MB, and AD, that such conduct was likely to deceive, defraud or harm the public, and that as of June 30, 1984, his license to practice medicine in the state of Wyoming should be revoked.

## I.

### SUFFICIENCY OF THE EVIDENCE

[1] The Board may revoke a license for: "(iii) The performance of any dishonest, unethical or unprofessional conduct likely to deceive, defraud or harm the public." § 33–26–129(b)(iii), W.S.1977.

The authority for the Board's revocation of appellant's license is found in § 33–26–136, W.S.1977, which provides:

"(a) After the hearing, the board shall enter its order pursuant to the Wyoming Administrative Procedure Act [§§ 16–3–101 to 16–3–115]. The board may:

\*      \*      \*      \*      \*      \*

"(iv) Revoke the license."

For the board to revoke, suspend or restrict a license or take other disciplinary action against a licensed physician, the evidence must be clear and convincing that he has violated the provisions of § 33–26–129(b), W.S.1977. *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322, 326 (1968). Clear and convincing evidence is " '[t]hat kind of proof which would persuade a trier of fact that the truth of the contention is highly probable.' *MacGuire v. Harriscope Broadcasting Co.*, Wyo., 612 P.2d 830, 839 (1980)." *Matter of Parental Rights of GP*, Wyo., 679 P.2d 976, 982 (1984); *Thomasi v. Koch*, Wyo., 660 P.2d 806, 812 (1983).

At the hearing MA testified that during September 1982, she saw appellant for a post-natal checkup. The pelvic examination was conducted with her lying on her back on the examination table, her feet in the stirrups, and a sheet over her knees which obstructed her view of the examiner. Appellant began with a finger examination and then informed MA that he would have to dilate her. She could not see what was being done, but sensed that something was wrong, associating the experience with sexual intercourse. During a second pelvic examination in November 1982, MA said, "it happened again" and she concluded that appellant had inserted his penis in her vagina to "dilate" her. She informed her sister, her mother, and her Bishop of the incidents and did not return to appellant for her medical care. In June 1983, MA by letter, informed the president of the Wyoming State Medical Board of the incidents.

MB testified that she twice cancelled appointments with appellant because of suspicions that he had sexual intercourse with her during prior pelvic examinations. MB was sick with a sore throat and appellant's receptionist convinced her to keep a third appointment on April 21, 1983. Appellant gave MB a sheet and instructed her to prepare for a pelvic examination. With MB lying on the examining table, undressed, her feet in the stirrups, and covered with a sheet, appellant began the examination with a speculum and his fingers, and then advised MB that he would have to "dilate" her. He stood as he dilated her, the pain was intense and she felt his pants against

her body. Appellant said, "let me pull it out a little bit and then I'll try again," and then pushed real hard and said, "well, I just can't get it in all the way." Appellant came around to the side of the table. MB felt an object touch her hand. She looked—it was appellant's penis. Before mailing a letter of complaint to the Medical Board, MB and her husband met with appellant at his request. Appellant expressed concern about rumors of his misconduct. He then advised MB's husband that he would not have to pay his medical bill in the amount of $1613.00.

AD had prior experiences during pelvic examinations about which she was suspicious. Then on February 12, 1983, a Saturday afternoon, she went to appellant for treatment of a fever and headache. Appellant suggested a pelvic examination because of the possibility of a low grade kidney infection. To dilate AD appellant pushed something into her vagina, pulled it out and pushed it in further until his hips came up against hers and then she knew his penis was penetrating her vagina. AD said she didn't know what to do—she was in a panic. Appellant gave her a prescription and she left. She informed her husband of what had happened and complained, in writing, to the Wyoming State Board of Medical Examiners.

Appellant argues that we should not find the evidence substantial because MA, MB, and AD are not credible witnesses. His argument is essentially the same as to each of the three witnesses. Thus, appellant states,

> "why doesn't this adult, presumably normal, lady pull the sheet down, if there is one, and see exactly what he is doing if she suspects some impropriety. How normal is it to simply lay there and allow yourself to be, in effect, raped * * *."

A brief examination of the reported testimony demonstrates why they did nothing and why the Board found the evidence clear and convincing and the witnesses credible. MA, after stating that appellant put his penis in her vagina, said:

"I'm mad because I wasn't strong enough to sit up and find out for sure. I'm mad that that strength isn't in me. And so as a result of this, I have lost some self-respect, because I wasn't strong enough. And I'm scared to death that if another doctor were to do it, I don't know what I would do. I just shake.

\* \* \* \* \* \*

"Q. I've asked you some tough questions and I'm going to ask you one last tough one, Mrs. [MA]. I appreciate your bearing with me.

"If you had it to do all over again, would you still write the letter to the Board of Medical Examiners?

"A. I don't have any choice. I can't live with myself if I don't. I've lost enough self-respect, I couldn't lose any more. It just wasn't a matter of choice. After I heard that people had been offended for five years, I didn't have any choice. It was like the choice was then lifted from me and the burden was on my back. I just couldn't sit back."

And AD testified:

"Q. Okay. Then what happened next?

"A. Then he got the table all ready, you know, and had me scoot down on the end of the table until my rear touched his hand. And then he tried with the speculum and he said * * *, 'This is awfully uncomfortable, isn't it?' And I said, 'Yes, but it always is.'

"And so he said he would dilate me and that would make it easier for me. And I really didn't think anything of it, but as soon as he put whatever it was in, I thought, this can't be true. This can't be true. He wouldn't do that to me. But I knew it was him * * *."

When asked why she didn't say something to appellant or object, AD said:

"A. Well, I was alone. I did. I thought about it. I thought there is nobody else in here. He could do anything to me and nobody would ever know. And caught in a situation like that, almost any normal person would panic and maybe do something that would harm

someone else. And all this went through my mind and I thought I can't say anything. So I didn't say anything at all and left."

With respect to MB's testimony that she observed appellant's penis, appellant, in his brief, argues:

"Now after this ejaculation occurs the witness contends that the doctor simply moved around to the side of the table * * *. Next, the witness stated 'this object, slips between her fingers' and was 'laying on the table' * * * at which time she also looks down and 'sees' the penis. "[S]ince the doctor had his lab coat on, * * * it would appear that the perpetrator of this offense would be an individual of remarkable endowment since a portion of it remained in his pants, behind his lab coat, crossed her hand, laid on the table and at some point was buried in her leg."

Appellant concludes with:

"This testimony is greater in degree than simply incredible. It is bizarre, ludicrous and demented. The Board, however, finds it not only 'credible', but 'clear and convincing'."

Appellant's view of the evidence is argument pure and simple. He must have made the same argument to the Medical Board that heard the case and they rejected it. We look again to the verbatim testimony of MB who, after being advised by appellant that he would dilate her, states:

"So he pulled it out and he turned around and faced the sink again. He walked up over to the side and I had my hand down on the side of the table. And he pushed—he leaned up forward. And when he leaned up against the table close to put his hand on my stomach to push, this object slipped between my fingers again. And this time I didn't pull my hand up. I kept it down there. And he had his hands across my arms. It was laying on the table and he was pushing my stomach. And every time he would move in, the object would move in and rub in between my fingers.

"Q. Did you look to see what it was?

"A. This time I did. * * * And I pulled my hand up and I looked down. And it was a penis. I did not see the end, where his pants were and the other end was pushed up against my leg, but it was a penis on the table.

"Q. Did you say anything, Mrs. [MB]?

"A. I didn't. I laid there. And I thought to myself, it couldn't be a penis because he wouldn't do this."

The Board had the advantage of hearing the witnesses' testimony firsthand, observing their demeanor, facial expressions, reaction to questions, and their openness and fairness in testifying. This court on review does not have the same advantage and we, therefore, accord considerable deference to the trier of fact in its determination of questions of credibility and weight of evidence. The Medical Board that presided at this hearing consisted of four practicing doctors, appellant's peers, who were educated, experienced, and knowledgeable in the procedures appellant performed. We have stated:

"We also start, of course, with the presumption that members of the board 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Fallon v. Wyoming State Board of Medical Examiners*, supra, 441 P.2d at 329, quoting *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 1004, 84 L.Ed. 1429 (1941).

The Board found the testimony of MA, MB, and AD,

"credible, consistent, clear and convincing. Likewise, with straightforward, candid expression, without rancor, [they] testified about [their] experiences with Licensee and his acts of ethical and professional misconduct toward [them]."

The burden of proving a lack of substantial evidence is upon the party appealing the Board's decision. *Laramie River Conservation Council v. Industrial Siting Council*, Wyo., 588 P.2d 1241, 1253 (1978). This court has repeatedly declared a lack of willingness to substitute its opinion as to the weight and credibility of the evidence

for that of the administrative agency which acted as the trier of fact. *Gilmore v. Oil and Gas Conservation Commission*, Wyo., 642 P.2d 773, 776 (1982). We will not displace an agency's findings between two fairly conflicting points of view, even though the court might have made a different decision had the matter been before the court initially. *Employment Security Commission of Wyoming v. Young*, Wyo., 713 P.2d 198 (1986).

Our review of the evidence, testimony, and record in this case tells us that there is substantial evidence to support the findings, conclusions, and decision of the Board.

## II

### FAILURE TO REQUIRE EXAMINATION

■ Appellant next contends that the State Medical Board was required by § 33–26–131(a) to arrange for an examination of appellant before proceeding with the contested case hearing and that the failure to provide such examination necessitates reversal of the Board's order revoking appellant's license.

After receipt of the original complaints by patients of Dr. Story, there was an investigation and informal interview with Dr. Story, pursuant to § 33–26–130(b) and (d) which provide:

"(b) The board on complaint to it, or on its own motion, shall investigate any complaint or matter which appears to show that an individual licensed in this state may be medically incompetent, may be guilty of unprofessional or dishonorable conduct or may be mentally or physically unable safely to engage in the practice of medicine.

\* \* \* \* \* \*

"(d) If it appears to the board that the evidence before it pursuant to this section may be true, the board shall request an informal interview with the physician or other individual licensed by the board. If he refuses an invitation for an infor-

mal interview, the board may suspend or revoke his license."

Section 33–26–131(a) provides:

"Either before or after an informal interview, the board *may* arrange an examination of the physician or other licensee. The board shall direct an examination if it has reasonable cause to believe that he cannot practice medicine with reasonable skill and safety to patients." (Emphasis added.)

Dr. Story appeared for the interview and insisted that all of the complaints by patients were false and without substance and that he would defend against them. The Board stated in its written findings of fact and conclusions of law:

"20. The materiality of the July 22, 1983, minutes is that such an informal interview is a necessary part of the procedure for disciplinary action against a medical licensee and required by § 33–26–130(d), W.S. No final determination of the validity of the complaints against the Licensee was made at that time."

Having made no determination with respect to the merits of the controversy, the Board in the exercise of its discretion under § 33–26–131(a) did not order an examination. The manner in which the Board proceeded with the complaints was eminently fair. We note also that neither appellant nor his counsel requested an examination or objected to the Board's failure to require one. Thus, the claimed error is not preserved for review. *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming*, Wyo., 627 P.2d 173, 180 (1981). There is no claim of plain error and nothing before us that would require reversal.

## III

### ADMISSION OF HEARSAY

■ Appellant's final claim of error is that the Board's, "actions, findings and conclusions are arbitrary, capricious, an abuse of discretion" because, as stated in his brief:

"[T]he unrestrained admittance of hearsay and rumor evidence, so prejudiced the Contestee and overwhelmed the Board, that an impartial and fair hearing was impossible."

This court may set aside an action of an administrative agency that is arbitrary and capricious or where there is an illegal exercise of discretion. *Bixby v. Cross*, Wyo., 384 P.2d 710, 714 (1963). For an action to be considered arbitrary and capricious, such action must be shown to be willful and unreasoning action, without consideration and in disregard of facts and circumstances. *Marathon Oil Company v. Pan American Petroleum Corporation*, Wyo., 473 P.2d 575, 577 (1970). Recently this court had occasion to state that:

"Running through those cases we find words of description such as dishonesty, bad faith, illegality, and oppressiveness on the part of the agency. The term 'abuse of discretion' in its application to agency conduct carries with it a connotation of illegal and other conduct smacking of censurable behavior, justifying judicial intervention." *State v. Weisz & Sons, Inc.*, Wyo., 713 P.2d 176, 185 (1986).

And with respect to abuse of discretion we have said:

"An abuse of discretion is that which shocks the conscience of the court and appears so unfair and inequitable that a reasonable person could not abide it. The decision * * * will not be reversed unless there is a firm conviction that a clear error of judgment was committed." (Citations omitted.) *Waldrop v. Weaver*, Wyo., 702 P.2d 1291, 1293 (1985).

Dr. John Welch testified that he had heard rumors concerning Dr. Story molesting patients during pelvic exams, that several women had informed him of the molesting, that he had discussed the matter with the hospital administrator and with Dr. Story, and that he said to Dr. Story in their meeting:

"[T]hat there wasn't any way in the world that you can defend yourself unless you have a witness there in those situations. And that he ought to have someone with him during his pelvic examinations. And he made the statement at that time, I will have to change my whole way of, I guess, office practice. I don't remember the exact words."

The proceeding against Dr. Story was required to be conducted as a contested case under the Wyoming Administrative Procedure Act (APA) § 33–26–135(a), W.S. 1977. With respect to admissible evidence, the APA, § 16–3–108(a), W.S.1977, provides:

"(a) In contested cases irrelevant, immaterial or unduly repetitious evidence shall be excluded and no sanction shall be imposed or order issued except upon consideration of the whole record or such portion thereof as may be cited by any party and unless supported by the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs. Agencies shall give effect to the rules of privilege recognized by law. Subject to these requirements and agency rule if the interests of the parties will not be prejudiced substantially testimony may be received in written form subject to the right of cross-examination as provided in subsection (c) of this section."

We begin with the general rule that administrative agencies acting in a judicial or quasi judicial capacity are not bound by technical rules of evidence that govern trials by courts or juries, and it is usually held that evidence will not be excluded merely because it is hearsay. *Falsone v. United States*, 205 F.2d 734 (5th Cir.1953), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375; 2 Am.Jur.2d Administrative Law § 378. Where hearsay evidence is by statute admissible in administrative proceedings, it is often held that it must be probative, trustworthy and credible; and, although it may not be the sole basis for establishing an essential fact and is insufficient to support an administrative decision, it may be considered as corroborative of facts otherwise established. *Fisher v. Louisiana State Board of Medical Exam-*

*iners,* La.App., 352 So.2d 729 (1977); Annot., 36 A.L.R.3rd 12 (1971).

The Federal Administrative Procedure Act is very similar to the Wyoming Act and is construed to allow the receipt of hearsay, it being stated that:

> "Not only is there no administrative rule of automatic exclusion for hearsay evidence, but the only limit to the admissibility of hearsay evidence is that it bear satisfactory indicia of reliability * * * that the hearsay be probative and its use fundamentally fair." *Calhoun v. Bailar,* 626 F.2d 145, 148 (9th Cir.1980), cert. denied, 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981).

Some courts have held that hearsay that is reliable, trustworthy, and credible may by itself constitute substantial evidence and support an administrative decision. Factors to be considered in determining whether hearsay is sufficient are the type of material submitted, whether sworn, in writing or oral, whether contradicted by direct testimony, whether declarant is available, the credibility of declarant, whether corroborated, and the guarantees of trustworthiness. *Calhoun v. Bailar,* supra.

Our APA provides only for the exclusion of "irrelevant, immaterial or unduly repetitious evidence." Section 16–3–108(a), W.S.1977. It does not require that hearsay evidence be excluded. We hold that hearsay that is otherwise admissible under § 16–3–108(a), and that is probative, trustworthy and credible may be received in evidence at an agency hearing. The testimony of Dr. John Welch admitted at this hearing, although hearsay, clearly satisfied our requirements and was properly received by the Board. It was "the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs," required by § 16–3–108(a), to support the revocation of appellant's license.

We need not decide in this case whether the hearsay, by itself, was sufficient to sustain the Board's decision because there was direct evidence that was convincing and substantial by each of the persons who had complained against appellant in writing.

■ Appellant next contends that "it was error for Complainant to admit and consider 'Minutes of Special Meeting' dated July 22, 1983."

The Minutes of Special Meeting to which appellant objects were the result of an informal interview with Dr. Story pursuant to § 33–26–130(d), W.S.1977, Cum.Supp. 1985, which provides that upon receipt of a complaint, if it appears that the evidence may be true, "the board shall request an informal interview with the physician." The informal interview was with two physicians appointed by the Board (not members of the hearing panel) and with members of the Attorney General's staff representing the Board. A written report of the meeting was received in evidence at the hearing.

Section 16–3–108(a), W.S.1977, provides in part:

> "Subject to these requirements and agency rule if the interests of the parties will not be prejudiced substantially testimony may be received in written form subject to the right of cross-examination as provided in subsection (c) of this section."

After the report was received in evidence, the preparer testified and was cross-examined. The report was an integral part of the entire process and though hearsay, it was admissible as we have previously determined. It was necessary to a complete record before the Board. We perceive nothing in it that was extraneous to the hearing, inflammatory or prejudicial. Mere exposure to evidence is insufficient to demonstrate prejudice. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). A report containing evidence identical to evidence received at the hearing is not prejudicial. *Fisher v. Louisiana State Board of Medical Examiners,* supra, 352 So.2d 729.

Even if the report of the meeting was improperly received (we do not believe it was), it was harmless. The Board was meticulous in assuring appellant a fair

hearing. Unlike *Fallon v. Wyoming State Board of Medical Examiners, supra,* 441 P.2d 322, the report contained no conclusions concerning appellant's guilt and was not submitted to the Board ex parte. From the onset of the investigation, the Board separated the investigatory and adjudicatory functions. It declined to consider the hearsay to which appellant now objects, stating expressly in its Findings of Fact, Conclusions of Law, and Order:

"20. The materiality of the July 22, 1983, minutes is that such an informal interview is a necessary part of the procedure for disciplinary action against a medical licensee and required by § 33–26–130(d), W.S. No final determination of the validity of the complaints against the Licensee was made at that time. No determination of whether Licensee engaged in unethical and unprofessional conduct as a physician is based in any part on what was said or done at the July 22, 1983, meeting, but is based solely on the testimony and other exhibits received at the March, 1984, hearing.

"21. * * * The testimony of Dr. Welch that a complaint had been made to him about the daughter of a friend having been molested by Licensee is also disregarded as unreliable hearsay. Dr. Welch's testimony is only material to the extent he talked to Licensee about the latter's pelvic examinations on two occasions and advised that he should have someone present when given * * * and to explain the procedures involved in the pelvic examination of a woman."

The Board, in its findings unequivocally stated that it did not rely upon the complained of evidence. Thus, the rule of harmless error applies. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925, 934–935 (1981); Rule 7.04, W.R.A.P. The general rules relating to harmless or prejudicial error apply to disciplinary proceedings. *Salerno v. Board of Dental Examiners,* 119 Ga.App. 743, 168 S.E.2d 875 (1969).

The Board found the evidence of appellant's violation of § 33–26–129(b), W.S.

1977, clear and convincing, and we agree. The order of the Board is affirmed.