2006 WY 112

**Y–O INVESTMENTS, INC.,**
**Appellant (Defendant),**

v.

**Rose EMKEN, Appellee (Plaintiff).**

**Rose Emken, Appellant (Plaintiff),**

v.

**Y–O Investments, Inc., Appellee**
**(Defendant).**

Nos. 05–168, 05–169.

Supreme Court of Wyoming.

Sept. 6, 2006.

Representing Y–O Investments, Inc.: Frank J. Jones, Wheatland, Wyoming.

Representing Rose Emken: Cole N. Sherard and D.N. Sherard, Wheatland, Wyoming. Argument by Mr. Cole N. Sherard.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, BURKE, JJ.

* Chief Justice at time of oral argument

GOLDEN, Justice.

[¶ 1] In an amended judgment and order following a bench trial in which neither party requested special findings as provided by W.R.C.P. 52(a), the district court ruled that Y–O Investments, Inc. (Y–O) did not breach the terms of a promissory note secured by a mortgage held by Rose Emken (Emken), but that Y–O must take several actions during the life of the note and mortgage to protect Emken's position and must pay her attorney fees in the sum of $2,000. Each party now appeals that part of the amended judgment and order adverse to that party. As explained below, we affirm the district court's ruling adverse to Emken and reverse the district court's ruling adverse to Y–O.

## ISSUES

[¶ 2] Emken asserts the district court erred in finding that Y–O was not in default on the note and mortgage when Y–O:

1) admitted converting Emken's security interest to itself to obtain loans from different lending institutions, depriving her of a part of her security interest;

2) caused Emken to sign blank, unacknowledged partial releases of lots covered by her mortgage and used them to convert numerous lots to Y–O's own use without Emken's authorization; and

3) failed to make timely payments as required by the terms of the note and mortgage.

Y–O states its appellate issues in these words:

A. Can the district court judge award attorney's fees when he found no default existed in the parties' contract?

B. Can the district court judge rewrite an unambiguous contract?

More specifically, Y–O asserts the district court erred in its ruling that, although Y–O was not in default on the note and mortgage as Emken alleged, Y–O:

1) shall provide information to Emken showing a plat of the property subject to the mortgage which designates the lots

that have been sold and the lots and un-platted tracts that remain unsold;

2) shall provide Emken, within thirty (30) days after entry of the amended judgment and order, a full and complete accounting of all business activities of Y–O Investments, Inc., which involve the property which is the subject matter of the mortgage held by Emken;

3) shall, upon each sale, exchange or transfer of any lot or tract of land contained within Emken's mortgage, make written request to Emken, through her attorney, for a release of that lot or tract from the mortgage, such request describing the property to be released, containing a copy of the sales documents which set forth in detail the total sales price and terms of payment of same, and listing in detail the transaction's expenses;

4) shall maintain a sufficient amount of property, subject to Emken's mortgage, of sufficient value, equal to one hundred and fifty percent (150%) of the then balance of principal and accrued interest on Emken's promissory note and mortgage; and

5) shall pay two thousand dollars ($2,000) in attorney's fees to Emken.

## GENERAL BACKGROUND FACTS AND PROCEEDINGS

[¶ 3] On July 13, 2004, Emken filed her complaint against Y–O in which she alleged that Y–O had defaulted on a promissory note that it had executed on July 12, 1997, by failing to make the payments required by the note's terms. In that regard, Emken alleged that Y–O had failed to apply one-half of the net proceeds of each sale of land to the outstanding balance of the loan evidenced by the note. Emken sought judgment for the outstanding balance together with accruing interest; reasonable attorney fees; costs; an accounting of all payments that Y–O had made to her and of all sales that Y–O had made since June 15, 1997; and foreclosure of the mortgage which secured the note. Answering the complaint, Y–O denied it had defaulted by failing to make the payments required by the note's terms and pleaded several affirmative defenses, including pay-ment, accord and satisfaction, estoppel, and waiver.

[¶ 4] The case was bench tried. At the beginning of the trial before the introduction of any evidence, neither party requested findings of fact and conclusions of law as provided in W.R.C.P. 52(a). Four witnesses testified during the trial: Emken; Cathy Weaver, a certified public accountant; James Greer, president of Y–O and Emken's brother; and Charlotte Greer, Y–O's secretary and James Greer's wife. The witnesses presented evidence about Y–O's obtaining loans from several lending institutions, Y–O's having Emken sign partial releases containing no property descriptions and using those when Y–O obtained loans from lending institutions and when Y–O sold property to buyers, and Y–O's making payments to Emken from the summer of 1997 through the summer of 2004. At the close of the evidence, Emken moved to conform the pleadings to the evidence based on the testimony of Emken and James Greer and moved to pierce Y–O's corporate veil and join the Greers as third-party defendants. The district court denied Emken's motion to pierce Y–O's corporate veil. The district court did not rule on Emken's motion to conform the pleadings to the evidence. Concerning Y–O's compliance with the terms of the promissory note, the district court remarked:

> Now, in terms of the promissory note itself, in reading through it, the way it is written, I believe that the terms and conditions of the—for the most part—the promissory note have been complied with. If there were payments that were late, and if they were, they were early on, because there has always been a surplus of things made. My view is that because of the course of dealing, any late payments early on—any complaints about that were waived.

[¶ 5] Although Emken's complaint had not alleged that Y–O had breached an implied covenant of good faith and fair dealing contained in the parties' promissory note and although Emken's end-of-trial motion to conform the pleadings to the evidence did not identify such a claim, the district court at trial's end remarked:

The part of the promissory note that I believe is not—there is not compliance with, I believe that every agreement under Wyoming law carries with it a covenant of good faith and fair dealing, and my belief is that when these releases were sought and when they were obtained, it was for the purpose—at least your sister, I believe, understood and fairly so, that those releases would be for the purpose of selling property so that she would be reimbursed so there would not be this administrative problem at the time. That clearly wasn't done, and I think what you did while having—making some business sense and so forth—wasn't what was anticipated by your sister, and that was something that needed to be clearly and completely spelled out to her before it was done.

Based upon these remarks, the district court ordered Y–O to take the several actions which Y–O now challenges on its cross-appeal. We note also that the district court's amended judgment and order contains no explicit mention of Y–O's non-compliance with an implied covenant of good faith and fair dealing.

[¶ 6] Following these remarks, the district court asked Y–O's counsel to prepare and submit to Emken's counsel for approval an order. Apparently, Emken's counsel, not Y–O's counsel, submitted a proposed judgment and order to the district court. The district court signed and filed that judgment and order, and Y–O's counsel objected to same, on that submission date. A few days later, Y–O filed a motion to alter and amend the judgment and order. Emken filed a response to that motion. Following a hearing on Y–O's motion and Emken's response, the district court filed its order granting Y–O's motion in part and denying Y–O's motion in part. The district court filed its amended judgment and order on May 13, 2005, and these cross-appeals were thereafter timely filed.

## STANDARDS OF REVIEW

[¶ 7] Before we discuss the issues raised in these cross-appeals and review the evidence adduced at trial in light of those issues, we shall identify the proper standards of review to be applied to those issues. Because the case was bench tried and neither party requested findings of fact and conclusions of law, this Court must consider that the amended judgment and order carries with it every finding of fact which is supported by the evidence. *Root v. Root*, 2003 WY 36, ¶ 11, 65 P.3d 41, 45 (Wyo.2003). We accept the prevailing party's evidence as true, give to that evidence every favorable inference which may be drawn from it, and although we may examine all of the properly admitted evidence in the record, we will not interfere with the trial court's findings of fact unless they are clearly erroneous or manifestly wrong and totally against the evidence. *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 336 (Wyo.1987). Although this standard of review is more often invoked in cases in which the trial court made specific findings of fact, it also applies in a case like the instant one in which the trial court made a general finding only. *Id.* This Court gives due regard to the trial court's opportunity to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Forshee, et ux. v. Delaney, et ux.*, 2005 WY 103, ¶ 6, 118 P.3d 445, 448 (Wyo. 2005).

[¶ 8] With respect to the parties' promissory note and mortgage, both parties agree that their terms are unambiguous and, therefore, the interpretation of those terms is a question of law, and that we review questions of law de novo. We agree the terms are unambiguous and our standard of review is de novo. With respect to an appeal of an award of attorney fees, the parties agree that we subscribe to the American rule, under which a prevailing party may be reimbursed for its attorney fees when express statutory or contractual authorization exists for such an award. *Alexander v. Meduna*, 2002 WY 83, ¶ 49, 47 P.3d 206, 220–21 (Wyo.2002).

[¶ 9] We recognize that the equitable remedy of an accounting may apply under various circumstances and that the trial court's decision to grant an accounting is within that court's discretion. *Patterson, et al. v. BP America Prod. Co.*, —— P.3d ——, 2006 WL 1171957, at *8 (Colo.App.2006);

*Mankert v. Elmatco Products, Inc., et al.*, 84 Conn.App. 456, 854 A.2d 766, 768–69 (Conn. App.2004). A trial court abuses its discretion, however, if it rules without regard to legal principles or without supporting evidence. *Id.; Welder v. Green,* 985 S.W.2d 170, 180 (Tex.App.1998).

### DISCUSSION

[¶ 10] We have carefully reviewed the trial transcript and, mindful of our standards of review, conclude that the evidence supports the following pertinent facts. Y–O, a Wyoming corporation, operates a real estate development company east of Wheatland, Wyoming. Its president is Jim Greer; its secretary, Charlotte Greer, Jim Greer's wife. Rose Emken is Jim Greer's sister. At one time, Emken was involved in the company, taking care of water bill collections. She paid $145,600 to buy a one-half interest in the company. However, within a few months, she wanted out; she and her brother turned her payment into a loan to the company, as evidenced by the promissory note and mortgage which are involved in this appeal. The mortgage covered about sixty lots owned by Y–O. The pertinent terms of the promissory note provided:

(a) Interest only shall be paid at the rate of $500.00 per month with the first payment being paid on the 15th day of June, 1997 and a like payment being due on the same date of each month thereafter until the entire obligation of this promissory note is paid in full.

(b) The property sold consists of platted lots and unplatted land which Y–O Investments, Inc., intends to convey to third parties. The remaining unpaid principal balance, and interest computed at 8% per annum on any unpaid principal balance, shall be paid as follows:

Upon the sale of each platted lot or unplatted parcel one-half (1/2) of the net proceeds (as determined by a representative of Y–O Investments, Inc.) received from any sale shall be paid to the holder of this promissory note. Proceeds of any amount received shall be first applied to any unpaid interest and the balance to principal.

(c) All unpaid principal balance and accrued interest shall be paid in full ten years from date.

(d) Interest shall be computed from and after June 15, 1997.

Maker reserves the right to pay any or all of the unpaid principal balance and accrued interest in advance without being subject to any penalty whatsoever.

If any interest payment is not paid when due, the amount of such unpaid interest shall become a part of and shall be added to the principal sum due hereunder and draw like interest as the principal. Should payment of any one or more installments become delinquent the entire balance shall, at the option of the Holder or payee hereof, to be exercised at any time after default, become at once due and payable. In case payment shall not be made at maturity, and if placed with an attorney or any collector for collection, the Maker promises to pay a reasonable collection fee and costs, which shall be added to the principal of this promissory note.

[¶ 11] The pertinent terms of the mortgage provided:

In case default shall be made in the payment of the above sum hereby secured, or in the payment of the interest thereon, or any part of such principal or interest, when the same shall become due, or in case default shall be made in any of the covenants and agreements hereof, then the whole indebtedness hereby secured, together with the interest thereon, shall become due and payable, and the morgagee . . . may proceed, pursuant to law, to foreclose on and sell said property, and out of the proceeds of such sale pay all sums due hereunder, together with all costs of sale and foreclosure, including attorney's fees equal to ten percent (10%) of the amount due and in no case less that $1,500.00.

[¶ 12] Shortly after the execution of the promissory note, Emken signed thirty-five to forty partial releases which did not contain legal descriptions of the mortgaged property partially released. When Y–O sold one of its lots, it used one of these partial releases, filling in the necessary legal description, and

paid Emken one-half of the sale proceeds as required by the terms of the promissory note. Y–O also used some of these partial releases to obtain from several banks financing for its expenses of operation and development. Mr. Greer told Emken that Y–O was going to use these partial releases to obtain this financing. These partial releases were signed so Y–O could operate without having to contact Emken and have her sign a partial release every time a lot was sold or financing for operation expenses was obtained. Emken did not object to signing the partial releases so Mr. Greer would have them on hand when he sold a piece of land. Y–O never sold any of its lots to any of the three banks from which it obtained its operation financing.

[¶ 13] During the first year after Y–O executed the promissory note, it did not make its monthly interest payments to Emken promptly on the 15th of each month, but it did make the payments later in the month or in the following month. Exhibits introduced by Y–O and received into evidence at trial showed that it was current with its monthly payments as of the date in July 2004 when Emken declared a default in the payments by filing her complaint. Emken conceded that she had accepted late payments from time to time for the seven-year period from the execution of the promissory note to the filing of her complaint. With respect to the sale of lots by Y–O to third parties, as provided in the promissory note, Y–O paid one-half of the net proceeds of each sale to Emken.

[¶ 14] Against the backdrop of these facts, Emken claims that the trial court erred in finding that Y–O was not in default on the promissory note and mortgage when it caused her to sign blank, unacknowledged partial releases of property covered by the mortgage, used those partial releases to obtain financing for various operating expenses without her authorization, and failed to make timely payments as required by the terms of the promissory note and mortgage. Y–O refutes those claims, relying on the unambiguous terms of the promissory note and mortgage and the facts that Emken historically accepted late interest payments; Y–O was

current in those payments and net sales proceeds payments at the time Emken declared default in July 2004; and that Y–O had told Emken, and she understood, that it was going to use her partial releases on occasion to obtain financing for operation and development expenses.

 [¶ 15] Applying our standard of review to the facts, we affirm the trial court's decision that Y–O did not default on the note and mortgage. No terms of that note and mortgage prohibited Y–O from obtaining and using Emken's partial releases as it did. Y–O was current in both its monthly interest payments and its net sales proceeds payments under the terms of the note and mortgage when Emken declared default in July 2004. As the trial court found, Emken, by historically accepting late interest payments, had waived those as a default basis. Given the facts in this record, we cannot say that the trial court's finding that Y–O did not default is clearly erroneous.

[¶ 16] We now turn to Y–O's contentions in its cross-appeal. Because the trial court found that Y–O was not in default on the note and mortgage, Y–O questions the trial court's ordering it to identify for Emken which lots have been sold and which have not; to provide Emken a full and complete accounting of all business activities involving the mortgaged property; to make written requests through Emken's attorney for future releases of lots being sold and to provide pertinent details about each lot sale; to maintain a sufficient amount of mortgaged property of a value of 150% of the then balance of principal and accrued interest on the note and mortgage; and to pay Emken the sum of $2,000 for her attorney fees. Y–O's position as to these requirements is straightforward: the trial court has impermissibly rewritten the parties' note and mortgage. *Lieberman v. Wyoming.com, LLC,* 2004 WY 1, ¶ 18, 82 P.3d 274, 282 (Wyo.2004). Y–O correctly points out that the note and mortgage do not contain any of these requirements. In particular, Y–O correctly observes that the note and mortgage allow attorney fees only if Y–O was in default, which the trial court did not find. In response, Emken concedes that the trial

court's requirements are not specifically stated in the note and mortgage. She contends, however, that they are impliedly contained therein. Emken cites no authority for this proposition, but apparently relies for it on the trial court's end-of-trial remarks about Y–O's noncompliance with a covenant of good faith and fair dealing impliedly contained in the note and mortgage.

[¶ 17] We do not think Emken's position is well-taken. The trial court's end-of-trial remark about an implied covenant of good faith and fair dealing was made only in the context of Y–O's obtaining partial releases from Emken. The trial court remarked that it believed Emken understood her partial releases would be "for the purpose of selling property so that she would be reimbursed so there would not be this administrative problem at the time;" and that "what you did while having—making some business sense and so forth—wasn't what was anticipated by your sister [Emken], and that was something that needed to be clearly and completely spelled out to her before it was done." Emken claims that these trial court remarks are a ruling that Y–O's obtaining and using the partial releases not only for selling property but also for obtaining financing for operating and development expenses constituted a breach of an implied covenant of good faith and fair dealing contained in the note and mortgage. We disagree. Emken's complaint did not allege the existence of or a breach of an implied covenant. Her end-of-trial motion to conform the pleadings to the evidence did not mention such a claim. The trial court did not expressly make such a ruling in its remarks or in its amended judgment and order. In its end-of-trial remarks after setting out the requirements for an accounting of Y–O's business activities involving property sales of the mortgaged property, the trial court remarked, "[a]nd part of this case, I believe, was justifiable, and so I'm going to add on $2,000 in attorney's fees because I believe the accounting was necessary and proper." Emken's accounting claim was ancillary to her breach of contract claim because its main purpose was to facilitate an accurate calculation of damages once a breach was found. The trial court ruled that Y–O had not breached the terms of the note and mortgage in any of the particulars alleged by Emken. Moreover, with the exhibits and testimony admitted at trial, Y–O had shown what lots had been sold, what payments had been made to Emken, and that Y–O was current in its payments of monthly interest and of net sales proceeds for lot sales. The trial court abused its discretion here on several counts. By ruling that Y–O had not defaulted on the note and mortgage, Emken's ancillary accounting claim was without legal basis because an accurate calculation of damages was unnecessary. By ruling that Y–O must perform the various requirements, including an accounting of business activities and sales, the trial court impermissibly rewrote the parties' note and mortgage. By ruling that Y–O must pay attorney fees in the sum of $2,000, the trial court impermissibly rewrote the parties' note and mortgage which allowed attorney fees only in the event of default. Moreover, in carefully examining the record, we found no evidence to support the attorney fees award.

[¶ 18] We affirm the amended judgment and order which found that Y–O was not in default on the promissory note and mortgage. We reverse the amended judgment and order which imposed on Y–O requirements not contained in the promissory note and mortgage and which imposed on Y–O an attorney fee payment of $2,000 to Emken.