2010 WY 77

**Thomas Leroy SANDERS, Appellant (Defendant),**

v.

**Shirley K. SANDERS and Daniel K. Sanders, Appellees (Plaintiffs).**

No. S–09–0238.

Supreme Court of Wyoming.

June 15, 2010.

Representing Appellant: Don W. Riske and James R. Salisbury of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming. Argument by Mr. Salisbury.

Representing Appellees: John J. Maier of John Maier Law Offices, Torrington, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Thomas Leroy Sanders (Leroy) was named as a joint tenant with right of survivorship on two Goshen County deeds. The other joint tenants, Shirley K. Sanders (Shirley) and Daniel K. Sanders (Daniel), brought a reformation action to have Leroy removed from the deeds. The district court reformed the deeds, and Leroy appealed. We conclude that the requirements for reformation were not met in this case and reverse.

## ISSUE

[¶ 2] Although the parties articulate several issues on appeal, the dispositive issue is:

Are the District Court's *Findings of Fact, Conclusions of Law and Order* providing for reformation of the deeds by removing Leroy as a joint tenant with right of survivorship supported by sufficient evidence and in accordance with Wyoming law?

## FACTS

[¶ 3] Shirley operates a farming and ranching enterprise in Goshen County and is the father of Leroy and Daniel. In 1995, Shirley's mother, Yola Sanders (Yola), decided to sell property referred to by the parties as Parcel 1 to Shirley. The purchase agreement drafted by Yola's attorney, Jerry Smith, stated that Yola would sell the property to Shirley under an installment contract which would require him to execute a promissory note and a mortgage on the property to secure the debt.

[¶ 4] On May 9, 1995, Yola and Shirley went to Mr. Smith's office to execute the documents. Shirley told Mr. Smith that he

wanted Leroy's name added to the deed with a right of survivorship. He wanted to do this for two reasons—1) he was estranged from his wife and did not want her to be able to make a claim to the property; and 2) as part of his estate planning, he wanted the property to pass to Leroy by operation of law without going through probate. Although the attorney advised him against it, Shirley insisted on putting Leroy's name on the deed. Consequently, the deed was revised to include Leroy as a joint tenant with right of survivorship. Leroy signed the mortgage which secured the debt to Yola, but Shirley remained solely liable on the promissory note.

[¶ 5] In 1998, property referred to by the parties as Parcel 2 and owned by the Janet E. McIlquham Revocable Trust became available for purchase. Members of the Sanders family had leased the property for many years and Shirley's father had wanted to purchase it. To that end, he had placed funds in certificates of deposit to finance the eventual purchase of the property. After Shirley's father died, Yola had title to the certificates of deposit, and she gifted the funds to Shirley, Daniel, Leroy and Leroy's wife[1] to be used to purchase the property. Shirley, Leroy and Daniel were named on the deed to Parcel 2 as joint tenants with right of survivorship.

[¶ 6] Shirley and Leroy farmed together until a dispute arose between them. In June 2002, Leroy brought suit (hereinafter referred to as the First Case) against Shirley and Daniel asserting that he had the right to a present possessory interest in Parcels 1 and 2. During the course of that litigation, Shirley requested that the deeds be reformed to establish that Leroy did not have a present possessory interest in the properties, but only a survivorship interest. Shortly before the matter was to go to trial, Leroy moved to dismiss the action. The First Case was dismissed on November 1, 2004, with the district court making the following rulings:

1. [Leroy's] Motion to Dismiss is granted, and all of [Leroy's] causes of action are dismissed, with prejudice; specifically including but not limited to:

A. All of [Leroy's] claims and causes of action alleging any present ownership interest in or rights to possession, use or control of [Parcels 1 and 2] and any right or claim to partition of said real property.

. . . .

2. [Shirley and Daniel] have voluntarily dismissed their claims, counterclaims and defenses against [Leroy] and that such dismissal shall be without prejudice and that [Shirley and Daniel], or either of them, may, in the future, assert any of their claims, counterclaims and defenses against [Leroy]. . . .

[¶ 7] After dismissal of the First Case, Leroy continued to assert that he had the right to a present possessory interest in the properties. He accessed the properties and told others, including hunters, that they could use them. On June 15, 2007, Shirley and Daniel filed a complaint against Leroy. Among other remedies, they sought reformation of the deeds to Parcels 1 and 2 by removing Leroy as a joint tenant. Leroy moved for summary judgment claiming the deeds clearly set forth his interest in the properties. Shirley and Daniel responded with a motion to strike Leroy's summary judgment motion on the grounds that his claims were barred by res judicata or judicial estoppel because of the dismissal with prejudice of his claims in the First Case.

[¶ 8] The district court denied Leroy's motion for summary judgment, ruling that its order in the First Case dismissing Leroy's claims with prejudice was binding in the current action and res judicata prohibited Leroy from claiming any present interest in Parcels 1 and 2. The court also stated, however, that Leroy was entitled to assert a future interest, such as a remainder interest, in the properties.

[¶ 9] The district court conducted a bench trial on December 1, 2008, and after the trial, the district court issued findings of fact and conclusions of law, ordering reformation of the deeds to Parcels 1 and 2 by removing

1. Although Leroy's wife was initially involved in this dispute, she is no longer a party.

Leroy as a grantee without any mention of a future interest.

## STANDARD OF REVIEW

[¶ 10] In reviewing the determination of a district court after a bench trial, we apply the following standard:

> After a bench trial, we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions *de novo. Hansuld v. Lariat Diesel Corp.,* 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo. 2003) (citing *Rennard v. Vollmar,* 977 P.2d 1277, 1279 (Wyo.1999)). We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. *Deroche v. R.L. Manning Co.,* 737 P.2d 332, 336 (Wyo.1987). Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct. *Piroschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005).

> This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. *Forshee, et ux. v. Delaney, et ux.,* 2005 WY 103, ¶ 6, 118 P.3d 445, 448 (Wyo.2005). Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. *Harber v. Jensen,* 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) (quoting *Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003)). Findings may not be set aside because we would have reached a different result. *Harber,* ¶ 7, 97 P.3d at 60 (citing *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, 681 (Wyo.2003)). A finding will only be set aside if, although there is evidence to support it, this Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Mullinnix LLC v. HKB Roy-*

*alty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

. . . .

We review questions of law de novo. *Y–O Investments, Inc. v. Emken,* 2006 WY 112, ¶ 8, 142 P.3d 1127, 1130 (Wyo.2006).

*Snelling v. Roman,* 2007 WY 49, ¶¶ 7–9, 154 P.3d 341, 345 (Wyo.2007). *See also, Ultra Resources, Inc. v. Hartman,* 2010 WY 36, ¶ 97, 226 P.3d 889, 922–23 (Wyo.2010).

## DISCUSSION

[¶ 11] The district court's order after the bench trial included the following pertinent findings of fact:

3. For many years prior to June 28, 2002, Shirley farmed and ranched with his son, Leroy. Prior to May 9, 1995, Shirley and Leroy entered into an oral agreement whereby Shirley would, from time to time, include Leroy as a joint owner on certain of Shirley's property, as part of Shirley's estate planning and in order to prevent Shirley's wife from possibly claiming interests in the property. Leroy agreed that he would not have or exercise any rights to such property during Shirley's life and that Shirley would retain all rights to such property during his life; including, but not limited to, the right to sell, transfer or otherwise alienate any or all of such property. Shirley and Leroy further agreed that, upon Shirley's death, if any such property had not been sold, transferred or otherwise alienated, Leroy would then receive an ownership interest in such property in accordance with the title, deed or other evidence of title relating to such property.

4. In reliance on his agreement with Leroy, Shirley included Leroy's name on titles and bills of sale to various vehicles, equipment and other personal property prior to May 9, 1995, for which Leroy provided no consideration.

5. On May 9, 1995, Shirley entered into an agreement with his mother, Yola Sanders, for his installment purchase of the real property described above as

Parcel 1. . . . In reliance on his agreement with Leroy, Shirley had Yola Sander's attorney include Leroy on the deed to Parcel 1 . . . as a joint tenant with right of survivorship along with Shirley. Shirley was solely liable for the debt to Yola Sanders for the purchase price and Leroy has never provided any consideration for, or paid any of the taxes or operating expenses of Parcel 1.

6. On June 3, 1998, Shirley purchased the real property described above as Parcel 2 from the trustee of the Janet E. McIlquham Revocable Trust. A portion of the consideration for the purchase of Parcel 2 had come from transfers made from Yola Sanders to Shirley, Leroy, and Daniel for the express purpose of allowing Shirley to purchase Parcel 2. In reliance on his agreement with Leroy, and upon his identical agreement with Daniel, Shirley had Leroy and Daniel included on the deed to Parcel 2 as . . . joint tenant[s] with right of survivorship along with Shirley.

7. On June 28, 2002, Leroy sued his father, Shirley, and his brother, Daniel, [in the First Case], alleging that he had a present possessory interest in the real property described in Parcel 1 and Parcel 2. Shirley and Daniel testified at trial that Leroy violated his agreement with Shirley by making these claims.

. . . .

10. After the dismissal of [the First Case], pursuant to the terms of his agreement with Shirley and at Shirley's request, Leroy signed titles to allow Shirley to transfer ownership of several vehicles to other people.

. . . .

13. Leroy presented no testimony or evidence at trial to contest the existence or terms of his oral agreement with Shirley.

The district court made the following relevant conclusions of law:

4. [Shirley and Daniel] proved by uncontested, clear and convincing evidence that prior to May 9, 1995, Shirley and Leroy entered into an oral agreement whereby Shirley would, from time to time, include Leroy as a joint owner on certain of Shirley's property, as part of Shirley's estate planning in order to prevent Shirley's wife from possibly claiming interests in the property. The agreement specified that Leroy would not have or exercise any rights to such property during Shirley's life and that Shirley would retain all rights to such property during his life, including but not limited to, the right to sell, transfer or otherwise alienate any or all of such property. Shirley and Leroy further agreed that, upon Shirley's death, if any such property had not been sold, transferred or otherwise alienated, Leroy would then receive an ownership interest in such property in accordance with the title, deed or other evidence of title relating to such property.

5. Shirley fully performed his side of his oral agreement with Leroy.

6. Leroy breached his oral agreement with Shirley by asserting rights in Parcel 1 and Parcel 2 by filing suit against Shirley · and Daniel in [the First Case].

7. The parties mutually believed the deeds properly addressed their agreement, but the deeds did not. The agreement did not provide for Leroy to have any legal interest in the property, but to have a potential testamentary interest.

8. [The order dismissing the First Case] was a final order and a complete adjudication that Leroy had no present possessory interest in Parcel 1 and Parcel 2 thereafter.

9. Leroy is barred from asserting any present possessory interest in Parcel 1 and Parcel 2 by virtue of the dismissal in [the First Case].

10. Leroy's continued entries onto Parcel 1 and Parcel 2, and his directions to third parties to enter Parcel 1 and Parcel 2 after the [district court entered the order dismissing the First Case] were violations of said Order. . . .

11. [Shirley and Daniel] are entitled to reformation of the deeds to Parcels 1 and

Parcel 2 to remove Leroy as a joint owner as equitable relief to conform to the intention of Shirley and Leroy when they made the oral agreement. The parties' agreement did not provide for Leroy to have any ownership interest in the real estate.

[¶ 12] Reformation is an equitable remedy arising from the tenet that " 'equity treats that as done which ought to have been done.' " *Hutchins v. Payless Auto Sales, Inc.*, 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002), quoting 66 Am.Jur.2d *Reformation of Instruments* § 2 at 528 (1973). The remedy is appropriate when a written instrument does not accurately memorialize the parties' agreement. In order to reform an instrument, the court must conclude there is clear and convincing evidence of:

> (1) a meeting of the minds-a mutual understanding between the parties-prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake. *Toland v. Key Bank of Wyoming*, 847 P.2d 549, 554 (Wyo.1993); *Gasaway v. Reiter*, 736 P.2d 749, 751 (Wyo.1987); *Crompton v. Bruce*, 669 P.2d 930, 934 (Wyo.1983).

*Id.* Clear and convincing evidence is "proof which would persuade a trier of fact that the truth of the contention is highly probable." *MacGuire v. Harriscope Broadcasting Co.*, 612 P.2d 830, 839 (Wyo.1980). *See also, Story v. State Bd. of Medical Examiners*, 721 P.2d 1013, 1014 (Wyo.1986); *In re: Matter of GP*, 679 P.2d 976, 982 (Wyo.1984).

[¶ 13] In order to establish a reformation claim, the proponent must demonstrate that a mutual mistake was made by the parties in the drafting of the instrument. The requirements for showing a mutual mistake are: a prior agreement that the written instrument undertook to evidence; a mistake occurred in the drafting of the instrument; and an absence of fraud or inequitable conduct on the part of a party. *Mathis v. Wendling*, 962 P.2d 160, 164 (Wyo.1998).

[¶ 14] Leroy argues, first, that reformation was improper because there was no evidence of the grantors' intent, and, consequently, there was no showing of mutual mistake between the grantor and grantee as required by the reformation doctrine. He is correct that most reformation cases involve a showing of the grantor's and grantee's respective intents with regard to the instrument. *See, e.g., Toland v. Key Bank of Wyoming*, 847 P.2d 549 (Wyo.1993); *Gasaway v. Reiter*, 736 P.2d 749 (Wyo.1987). However, there is authority that allows reformation when the dispute is solely between co-grantees. "In a proper case, relief may be had as between parties claiming under the same instrument, the interests of the grantor not being at stake." 66 Am.Jur.2d *Reformation of Instruments*, § 43 (2009). We need not decide whether the absence of evidence regarding the grantors' intent is fatal to the claim here because we find this is not a proper case for reformation for other reasons.

[¶ 15] The district court ruled Shirley and Leroy had an antecedent agreement that, although Leroy would be included on the deeds as a joint tenant, he would have no present rights in the properties and Shirley could do as he wished with them during his lifetime. Based upon this finding, the district court reformed the deed by completely removing Leroy as a grantee. However, there is no evidence indicating either that the parties mistakenly included Leroy on the deed and thus he should be removed as a grantee, or that the parties intended that the restriction on Leroy's present use of the property be included in the deed language. With regard to Parcel 1, Shirley directed Yola's attorney, Mr. Smith, to name Leroy as a joint tenant with a right of survivorship. He testified that he wanted Leroy's name on the property in order to try to prevent his wife from making a claim to the property and for estate planning purposes. Mr. Smith advised Shirley that, by making Leroy a joint tenant, he was running the risk that Leroy would assert a present claim to the property.

[¶ 16] Shirley even recounted a story the attorney told him about another case involving a mother who had included her son as a joint tenant on a property and the son was "taking the property from her." Shirley rejected the attorney's advice to not place Leroy on the deed on the basis that he and

Leroy had a good relationship and he trusted Leroy. He stated: "Well, I don't believe Leroy would do that." The attorney confirmed that he had advised Shirley against putting Leroy's name on the deed, but Shirley had persisted. The attorney testified that there was no error in the drafting of the agreement.

[¶ 17] In *W.N. McMurry Const. Co. v. Community First Ins., Inc. Wyoming*, 2007 WY 96, ¶ 19, 160 P.3d 71, 77–78, we explained that in order for the remedy of reformation to be available, the evidence must establish that a mistake occurred in the drafting of the instrument, rather than in the reaching of the antecedent agreement. We even reinforced the fact that the mistake must occur in the drafting phase by quoting a more modern definition of reformation:

> *Black's Law Dictionary* 1307 (8th ed.2004), *citing* Douglas Laycock, *Modern American Remedies* 39 (3d ed.2002), has modernized the definition of reformation to explain that "[i]f the parties made a mistake about the premises of their agreement, about some fact in the world outside their word-processing machines, reformation is not a solution."

*Id.,* ¶ 19 n. 7, 160 P.3d at 78 n. 7.

[¶ 18] Shirley's own testimony confirms there was no drafting or "word processing" error:

> Q. [Y]ou indicated to Mr. Smith that you wanted the grantees as Shirley K. Sanders and Thomas Leroy Sanders as joint tenants with right of survivorship, correct?
>
> A. After the discussion, yes.
>
> Q. And that deed ... reflects exactly what you told Jerry Smith that you wanted, correct?
>
> A. Says Leroy's name is on this.
>
> Q. Doesn't it say ... that Yola is conveying and warranting to Shirley ... and ... Leroy ... as joint tenants with right of survivorship?

> A. Right.
>
> Q. That's exactly what you told him you wanted.
>
> A. Yes.
>
> Q. There is no mistake in the way that that is stated on that deed, is there?
>
> A. No.

[¶ 19] The transaction regarding Parcel 2 occurred three years later, in 1998. Shirley testified that he directed the title company to include Leroy and Daniel on the deed and he intended that they would be joint tenants with right of survivorship. There is no evidence that the parties intended that a restriction on Leroy's rights to the property in accordance with the oral agreement would be included in the deed. Shirley confirmed at the trial that there was no mistake in the way the deed was drafted.[2]

[¶ 20] As we stated in *Mathis*, 962 P.2d at 164, a mutual mistake is shown only if the instrument is intended to evidence a prior agreement and does not do so. The record clearly shows that the parties intended for Leroy to be included on the deeds as a joint tenant with right of survivorship. The evidence does not demonstrate that Shirley intended for the other aspects of his agreement with Leroy, i.e., that Shirley would have exclusive right of possession, be included in the deeds. Thus, the evidence in this case does not clearly establish a mutual mistake was made when the deeds were drafted to include Leroy as a joint tenant, and the elements necessary to support a claim for reformation are not present.

[¶ 21] There is one Wyoming case that ostensibly supports reformation of the deed even though the elements of the equitable doctrine are not present—*Allen v. Allen*, 550 P.2d 1137 (Wyo.1976). In *Allen*, the son and his wife wanted to purchase a property, the Haptonstall Place, but it was not large enough to qualify for a Farmers Home Administration loan. In order to help facilitate the purchase, the son and his father agreed

---

**2.** Part of the consideration for the purchase of Parcel 2 came through gifts from Yola to Leroy and his wife. Although Leroy mentions that he provided valuable consideration for the purchase of Parcel 2, he does so in the context of arguing that there was no mistake in the deed language. He does not argue that, by providing consideration for the purchase, he had a separate, quantifiable interest in the property.

that the Haptonstall Place and property the father already owned, the River Place, would be conveyed to all three as joint tenants with right of survivorship. *Id.* at 1140. The parties verbally agreed that, when the loan was satisfied, the River Place would be returned to the father as his sole property and the Haptonstall Place would be the property of the son and his wife. The son apparently did not honor the agreement to reconvey the River Place to his father and the father brought suit. The trial court ordered the River Place deed reformed to be the father's sole property. Without discussing the elements of reformation, this Court ruled that the trial court had properly allowed reformation to conform to the intention of the parties. *Id.* at 1144. One of the dissenting justices indicated that reformation was not the proper doctrine to be used under the circumstances. *Id.* at 1144–46, McClintock, J., dissenting.

[¶ 22] *Allen* certainly is not consistent with our other reformation cases. There was no indication that the deeds making the parties joint tenants of each of the properties were the product of mistake. Instead, the case seems to require specific performance of the oral agreement to reconvey the property when the loan was satisfied. In fact, the Court stated that "[t]he modified decree should also provide for reconveyance." Because there is no discussion of the elements of reformation in the *Allen* majority opinion, we are convinced that the case simply used the reformation terminology as a type of short hand to accomplish what was unquestionably the correct result—require the son and his wife to reconvey the River Property to the father in accordance with the parties' original agreement.

 [¶ 23] As in *Allen,* the evidence here supports the existence of a separate oral agreement, giving Shirley the right of sole possession during his lifetime. A joint tenancy typically allows each joint tenant full possession of the property at all times; however, the intent of the parties is paramount. 48A C.J.S. *Joint Tenancy* § 8 (2009); *Choman v. Epperley,* 592 P.2d 714, 715–16 (Wyo. 1979). "[J]oint tenants may contract with each other concerning exclusive possession or

control of the jointly held property, or with respect to the income to be derived therefrom, without severing or terminating the joint tenancy." 48A C.J.S. *Joint Tenancy* § 20 (2009). Although we have not located a Wyoming case directly on point, there are many cases from other jurisdictions stating that joint tenants may agree that one of them has the exclusive right of possession or income from the jointly owned property. *See, e.g., Downing v. Downing,* 326 Md. 468, 606 A.2d 208 (1992) (mother and son were joint tenants of a farm but entered into an agreement that mother would receive all rental payments from the property); *Nichols v. Nichols,* 43 Wis.2d 346, 168 N.W.2d 876 (1969) and *Cole v. Cole,* 139 Cal.App.2d 691, 294 P.2d 494 (1956) (husband and wife owned property as joint tenants but agreed as part of their divorce proceedings that one party would have exclusive possession of the property); *Miller v. Riegler,* 243 Ark. 251, 419 S.W.2d 599 (1967) (parties owning stocks in joint tenancy properly agreed that one of the joint tenants would retain all dividends from stocks).

[¶ 24] Moreover, the district court ruled that its dismissal of Leroy's claims with prejudice in the First Case is binding here. That order dismissed with prejudice "[a]ll of [Leroy's] claims and causes of action alleging any present ownership interest in or rights to possession, use or control of [Parcels 1 and 2] and any right or claim to partition of said real property." Leroy does not contest the district court's legal ruling that the order in the First Case is preclusive and, consequently, he is prohibited from asserting any present interest in the property and such order can be enforced by proper means if he violates it.

[¶ 25] The district court found the following terms of the oral agreement between Leroy and Shirley:

Shirley and Leroy entered into an oral agreement whereby Shirley would, from time to time, include Leroy as a joint owner on certain of Shirley's property, as part of Shirley's estate planning and in order to prevent Shirley's wife from possibly claiming interests in the property. Leroy agreed that he would not have or exercise any rights to such property dur-

ing Shirley's life and that Shirley would retain all rights to such property during his life; including, but not limited to, the right to sell, transfer or otherwise alienate any or all of such property. Shirley and Leroy further agreed that, upon Shirley's death, if any such property had not been sold, transferred or otherwise alienated, Leroy would then receive an ownership interest in such property in accordance with the title, deed or other evidence of title relating to such property.

Leroy does not challenge the district court's findings as to the terms of the oral agreement between his father and him, and we conclude the findings were not clearly erroneous. In fact, the record contains evidence that, when Shirley wanted to transfer other jointly held property such as vehicles, Leroy signed the transfer documents. If, in the future, Leroy fails to comply with the terms of the agreement, Shirley may bring a proper action to enforce it. However, this is not a proper case for reformation because the evidence does not establish that the parties made a mistake in drafting the deeds.

[¶ 26] Reversed.