B & R BUILDERS, a partnership; and
Dave Rosenbaum, Appellants
(Defendants),

v.

Steve BEILGARD, Appellee (Plaintiff).

No. 95–223.

Supreme Court of Wyoming.

May 1, 1996.

H.W. Rasmussen of Badley & Rasmussen, P.C., Sheridan, for appellants.

Greg L. Goddard of Goddard, Perry & Vogel, Buffalo, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Appellants Dave Rosenbaum (Rosenbaum) and B & R Builders appeal the district court's judgment after bench trial concerning partnership property and partnership accounting.

The judgment of the district court is affirmed.

## ISSUES

Rosenbaum presents these issues:

I. The District Court erred when it ignored the clear and unambiguous language contained in the contract documents and relied on extrinsic evidence and parol evidence rather than enforcing the writings contained in the contract documents.

II. The District Court erred in its accounting by allowing Appellees credit for an appliance upgrade and rental payments.

III. The District Court erred in failing to recognize that the Appellees were prevented from presenting contradictory claims pursuant to the doctrine of judicial estoppel.

Appellee Steve Beilgard (Beilgard) presents these issues:

Issue One: Did the District Court err when it relied on extrinsic and parole evidence to determine the intent of the partnership and the partnership assets?

Issue Two: Did the District Court err in its accounting by allowing appellee credit for an upgrade and rental payments?

Issue Three: Did the District Court err in finding that payment to independent counsel was a partnership asset?

## FACTS

In October 1992, Rosenbaum purchased property located at 512 and 522 Tisdale in Buffalo, Wyoming for $20,000.00. Beilgard and Rosenbaum entered into an oral partnership agreement to improve and develop that property and to seek out other property to buy, develop, and sell. Rilda Beilgard, appellee's wife, acted as the bookkeeper for the partnership.

The Tisdale property consisted of two adjoining lots. A cabin located on the 522 Tisdale lot was rented at the time of purchase and remained rented. The 512 Tisdale lot was vacant at the time of purchase. Beilgard secured a building permit and, in February of 1993, the parties began building a house on it. In March of 1993, Beilgard

signed a purchase agreement for another property (Ridgeway property) in Gillette, Wyoming. An attorney was hired to handle some matters in connection with this property. Before the sale closed, the partners approached Robert Alinder, president of Wyoming Bank and Trust, for a construction mortgage which would be used to continue building the 512 Tisdale house. Having represented themselves to Mr. Alinder as partners, Mr. Alinder requested a written partnership agreement as a condition for granting the loan request. The partners submitted an agreement for a partnership called B & R Builders and, following approval of the loan, opened a checking account in that name on March 29, 1993.

The following day, the Ridgeway property was purchased. The Ridgeway property was later sold with only minimal improvement to Rosenbaum's sister for a $20,000.00 profit. Eighteen thousand dollars of that profit was paid against the construction mortgage. In May of 1993, while building the Tisdale house and remodeling the cabin, the parties hired two employees and obtained unemployment insurance identification numbers as "B & R Builders, Beilgard, Steve & Rosenbaum, David—Ptnrs." Construction on the Tisdale house was completed the following September and listed for sale at $112,500.00. Beilgard and his wife signed a purchase agreement to buy it for $110,000 less a contractor's fee of $20,000.00. Beilgard claimed Rosenbaum had agreed to the contractor's fee because Rosenbaum was unable to assist Beilgard with building the house. While waiting for a home loan, Beilgard agreed to make the bank payments of $340.00 per month in exchange for moving into the Tisdale house and later upgraded the appliances in the home. A lease between the parties was signed at a later date. Several months later when Beilgard had not completed the purchase, Rosenbaum took all of the partnership documents from Beilgard and then, without first advising Beilgard, sold the house to a couple for $93,000.00. The Beilgards moved out of the house after the sheriff served them with notice to vacate. Rosenbaum did not share the profits of that sale with Beilgard.

Beilgard then learned that Rosenbaum had listed the cabin for sale. After a confronta-

tion with Rosenbaum, Beilgard filed a lis pendens and a complaint against the partnership and Rosenbaum on June 13, 1994, seeking a declaration that a partnership existed, an accounting, a dissolution and winding up of affairs. Following bench trial, the district court found that a partnership was formed named B & R Builders for the purpose of buying and developing properties. Partnership assets were identified as the Ridgeway property in Gillette, the constructed residence on the lot at 512 S. Tisdale, and the remodeled cabin at 522 S. Tisdale in Buffalo, Wyoming. The court ordered B & R Builders to pay Beilgard $9,236.14 for his interest in the 512 Tisdale property, reimbursement of appliance upgrades and attorney fees on all partnership property which had already been sold and ordered the sale of 522 S. Tisdale property and division of its expenses and proceeds. This appeal followed.

## DISCUSSION

*Standard of Review*

█ The district court's judgment was accompanied by findings of fact and conclusions of law. On appeal, the district court's findings of fact will not be overturned unless clearly erroneous and its conclusions of law will be reviewed *de novo*. *Rolfe v. Varley,* 860 P.2d 1152, 1156 (Wyo.1993).

█ In determining whether sufficient admissible evidence supports the district court's findings, we assume the evidence in favor of the successful party is true, leave out of consideration entirely the evidence presented by the unsuccessful party which conflicts with the successful party's evidence and afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. *Lutz v. Schmillen,* 899 P.2d 861, 863 (Wyo. 1995).

*Partnership Agreement*

█ In this appeal, Rosenbaum does not contest the district court's conclusion that a partnership existed, but does contest the manner used by the court in determining the scope of the partnership agreement's term identifying its purpose. Rosenbaum con-

tends that the district court erred in considering extrinsic evidence for determining the partnership's scope. In his view, the partnership agreement was unambiguous concerning the scope and purpose of the partnership and only its language should have determined these issues. Rosenbaum further contends that the district court's error in properly construing the agreement caused error in determining the assets and expenses. The district court was required to determine if a partnership existed, identify the partnership assets and expenses, and render an accounting. In this case, the district court determined that the partnership agreement memorialized the partnership previously entered into by the parties. The district court relied upon extrinsic evidence to determine the partnership's purpose, assets, and expenses.

Wyoming adopted the Uniform Partnership Act in 1994. In the absence of express agreement, the Act indicates that it applies to all existing partnerships unless another section indicates otherwise, WYO.STAT. §§ 17–21–103, 1003 (Cum.Supp.1995), and that a partnership continues after dissolution until the winding up of business is completed, at which time the partnership is terminated. WYO.STAT. § 17–21–803 (Cum.Supp.1995). Accordingly, we look first to the parties' agreement entitled "Partnership Agreement" which declares a partnership named B & R Builders. The next line states:

*2. Purpose:*

The purpose of the partnership shall be Sales and property management.

The district court found that the partnership's purpose "was to develop the Tisdale property owned *solely* by Rosenbaum—and perhaps buy and develop other properties." Rosenbaum contends the court erroneously considered extrinsic evidence in determining the partnership's purpose. Beilgard argues that given the partnership's name of "Builders," the agreement is ambiguous and the court properly considered extrinsic evidence to construe the meaning of "sales and property management."

In construing partnership agreements, we have said:

A contract is ambiguous where it "is obscure in its meaning because of its indefiniteness of expression or because it contains a double meaning."

*Rolfe,* 860 P.2d at 1158 (citation omitted).

In the context of determining whether a partnership existed, we have said that where a determination cannot be made by looking at the face of an instrument, a court may look outside its four corners and look at what the parties did and how they treated the arrangement between them. *P & M Cattle Co. v. Holler,* 559 P.2d 1019, 1023 (Wyo.1977). On facts similar to this case, the Oregon Supreme Court said that although a written agreement may be ambiguous, the scope of the business subject to a partnership agreement can properly be proved by parol evidence. *Harestad v. Weitzel,* 272 Or. 199, 536 P.2d 522, 527 (1975).

These rules indicate that whether we determine that "sales and property management" is an indefinite term, parol evidence is proper in determining the scope of a partnership and the district court did not err in considering parol evidence to determine the partnership's scope. However, we do consider "sales and property management" to be an indefinite term. Only extrinsic evidence could explain that the partnership's purpose was to purchase and then sell real estate rather than another product and only extrinsic evidence could resolve that property management included purchasing and developing land.

■ Rosenbaum's contention that Wyo. Stat. § 17–21–204(d) establishes a statutory presumption against finding the Tisdale property to be partnership property and, instead, must be considered his separate property is unpersuasive. That statute states in relevant part:

(d) Property acquired in the name of one (1) or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property even if used for partnership purposes.

Wyo.Stat. § 17–21–204(d) (Cum.Supp.1995). In this case, the statutory presumption is overcome by the evidence. In *Lutz,* this Court upheld a district court ruling that certain property was partnership property and not owned by the appellants individually. *Lutz,* 899 P.2d at 866. A partnership agreement had been signed by the parties and, like Rosenbaum, the appellants in *Lutz* asserted that, since they had acquired financing and title to the property, the property was separate property rather than a partnership asset. *Id.* at 865. *Lutz* stated:

Courts have generally found that, when they are deciding whether property is partnership property, they must determine the parties' intent. The courts may consider the partners' acts and course of conduct in determining the partners' intentions with regard to specific property. The courts may also consider the use which has been made of the property. Finally, the courts can consider whether, at the time the property was acquired, the reason for the acquisition was to devote the property to partnership purposes.

*Lutz,* 899 P.2d at 864 (citations omitted). In this case, considering the evidence in the light most favorable to Beilgard and leaving out entirely the evidence favorable to Rosenbaum, the record supports the district court's finding that the Tisdale property was partnership property. That evidence includes Mr. Alinder's testimony, the Beilgards' testimony, and the circumstances surrounding the parties' securing of the construction mortgage from the bank. There was no error.

*Accounting*

Rosenbaum next contends that the district court erred in its accounting by allowing Beilgard a credit for rental payments. The district court found that the 512 Tisdale lease was a partnership asset for which Beilgard should have paid $3,600.00 to the partnership. Since Beilgard paid only $2,477.00, the difference of $1,123.00 should be divided between the two parties and Rosenbaum's distribution share would be $561.50. Rosenbaum represents to this Court that Beilgard's testimony reveals that Beilgard was to pay $600.00 per month rent as required

by the lease and also to pay $340.00 per month to the bank. Our reading of his testimony, however, is that Beilgard believed the agreement to be only bank payments and not lease payments. The district court's findings of fact are entitled to our deference unless clearly erroneous. Since the findings indicate that the district court chose to rely upon the lease terms of $600.00 per month as evidence of the agreed upon rental payment amounts, no error has occurred.

■ Rosenbaum next contends that the district court erred in its accounting by allowing Beilgard a credit for appliance upgrades. Relying upon the lease agreement, Rosenbaum contends that Beilgard can be reimbursed only for maintenance expenses and not for upgrade expenses. Paragraph thirteen of the partnership agreement, entitled "Limitations on partners," lists a number of actions one partner may not do without the consent of all partners. This paragraph contains nothing which might preclude upgrading appliances. In paragraph ten of its findings, the district court determined that Beilgard should recover $1,101.00 from the partnership due to the appliance upgrade on the Tisdale property. The partnership agreement does not discuss treatment of a partner's advances to the partnership. Accordingly, we look to the Act.

WYO.STAT. § 17–21–401 discusses a partner's rights and duties and states:

(d) A partnership shall repay a partner who, in aid of the partnership, makes a payment or advance beyond the amount of capital the partner agreed to contribute.

WYO.STAT. § 17–21–401(d) (Cum.Supp.1995).

Settlement of accounts among partners is controlled by WYO.STAT. § 17–21–808 which states in relevant part:

(a) In winding up the partnership business, the assets of the partnership shall be applied to discharge its obligations to creditors, including partners who are creditors. Any surplus shall be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions pursuant to subsection (b) of this section.

WYO.STAT. § 17–21–808(a) (Cum.Supp.1995).

Consequently, a partner is generally entitled to reimbursement for advances to the partnership made within the scope of the partnership. *See generally Lutz*, 899 P.2d at 868 (relying upon similar wording in the repealed statute). The evidence supports the district court's determination that an advance was made to the partnership entitling Beilgard to reimbursement. There is no error.

*Judicial Estoppel*

■ Rosenbaum contends that Beilgard was judicially estopped from receiving reimbursement for a $1,000 payment to an attorney in connection with the Ridgeway property and the district court erred in determining it to be a partnership expense. During trial, Rosenbaum closely questioned Beilgard regarding the attorney fee. Rosenbaum's questions suggested that Beilgard had retained the attorney for another matter. Beilgard's answers indicated that at one time, he and Rosenbaum met with the attorney in connection with the Ridgeway property. Rosenbaum had Beilgard look at an agreement which Beilgard identified as the one connected to the Ridgeway property and then sought to introduce the agreement into evidence. Beilgard objected to introducing the agreement because Rosenbaum could not establish the document's origin. Rosenbaum agreed that he could not tell the court from where the document had come. The objection was sustained based upon privilege and the agreement was not admitted into evidence.

Rosenbaum contends that objecting to the agreement based upon privilege and then relying upon that agreement to gain reimbursement for a partnership expense are inconsistent claims barred by judicial estoppel. Rosenbaum asserts that if the fee is a partnership debt, then the agreement is the property of the partnership and the privilege goes to the partnership, not to the individual partner.

Judicial estoppel binds a party by his judicial declarations, and that party

"may not contradict them in a subsequent proceeding involving [the] same issues and parties.... Under this doctrine, a party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent action."

*Willowbrook Ranch, Inc., v. Nugget Exploration, Inc.,* 896 P.2d 769, 771 (Wyo.1995) (citation omitted).

Under this definition, inconsistent claims made *within* a judicial proceeding do not create a judicial estoppel issue. *See Zwemer v. Production Credit Ass'n of Midlands,* 792 P.2d 245, 246 (Wyo.1990). The doctrine is not applicable.

Affirmed.