2012 WY 21

**WHITNEY HOLDING CORPORATION,**
Appellant (Defendant),

v.

**Clarence William TERRY and Peggy Ann Terry, Trustees of the Declaration of Trust Dated February 27, 1990, Appellees (Plaintiffs).**

No. S–11–0075.

Supreme Court of Wyoming.

Feb. 14, 2012.

Representing Appellant: Mistee L. Godwin and Dan B. Riggs, Lonabaugh & Riggs, LLP, Sheridan, Wyoming; Joseph E. Jones, Fraser Stryker PC, Omaha, Nebraska. Argument by Mr. Jones.

Representing Appellees: S. Thomas Throne and Jacob T. Haseman, Throne Law Office, P.C., Sheridan, Wyoming. Argument by Mr. Throne and Mr. Haseman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Whitney Holding Corporation, challenges a decision of the district court quieting title in a certain mineral estate in favor of Appellees, Clarence and Peggy Terry. Whitney claims it reserved the mineral interest in a Limited Warranty Deed conveying the property from Whitney to the Terrys.[1] Whitney contends the deed is unambiguous and that the district court erred in considering extrinsic evidence to interpret the deed. Whitney also asserts that the Terrys' claim is barred by the ten year statute of limitations applicable to actions for reformation. We find no error and affirm.

## ISSUES

[¶ 2] Whitney presents five issues:

---

1. Whitney's predecessor in interest, Peter Kiewit Sons, Inc., executed the relevant documents in this case. In order to simplify the discussion, we will simply refer to Peter Kiewit and Whitney as "Whitney." Years after the transaction, the Terrys transferred the mineral interest into a trust. We will refer to the Terrys and the trust as "the Terrys."

1. Did the District Court err in holding that the Limited Warranty Deed was ambiguous?

2. Did the District Court err by denying Whitney's motion in limine and by overruling Whitney's objections to the admissibility of extrinsic evidence?

3. Did the District Court err by considering extrinsic evidence regarding the intent of the parties in entering into the Limited Warranty Deed?

4. Did the District Court err by finding that Whitney does not own a mineral interest in the subject property and that Terrys own one-half of the mineral rights in the subject property?

5. Did the District Court err by failing to determine that the Terrys' action was barred by the statute of limitations because they were seeking to reform the February 25, 1980 Deed (the "Limited Warranty Deed"), rather than quiet title?

The Terrys rephrase the issues:

1. Whether the District Court was correct in its finding that extrinsic evidence was admissible to discern the true intent of the parties and meaning of the Limited Warranty Deed.

2. Whether the District Court correctly concluded that the language of the Limited Warranty Deed was unclear and ambiguous.

3. Whether the District Court was correct in its determination that the Terrys were not barred by the statute of limitations for a reformation action because they were pursuing a quiet title action.

### FACTS

[¶ 3] The Terrys owned property located on the lower Tongue River in Sheridan County, Wyoming. They owned the property for many years prior to entering into an agreement to sell the property to Whitney. Whitney wanted the property in order to expand its coal mining operation in the area, and initially contacted the Terrys in the early 1970's about purchasing the property. Whitney maintained its interest and ultimately the Terrys agreed to sell. On December 17, 1979, Whitney and the Terrys entered into a Contract for Deed.

[¶ 4] In the Contract for Deed, the Terrys are identified as "Seller" and Whitney is identified as "Buyer." The purchase price for the Tongue River property was $614,750. In the contract, the Terrys were provided the option of receiving the purchase price in cash, in installments, or by making a "like-kind" exchange.

[¶ 5] The Terrys chose the "like-kind" exchange option and informed Whitney they had selected the "Ranchester property" for the exchange. The property was owned by the Kaufmanns.[2] Prior to selecting the Ranchester property, the Terrys looked at several other properties but eventually settled on the Ranchester property for several reasons, as explained by Mrs. Terry:

A. To begin with, it had to be a like-kind exchange because of the taxes and because we still wanted to ranch, and of course everyone talked about minerals on the lower Tongue River, so that was number one. We needed a place with minerals.

Q. All right. And any other criteria that you relayed to Mr. Taylor?

A. We wanted some irrigated land, and so that's why we were interested.

Before making the selection, they inquired about the mineral interest in the Ranchester property. According to Mrs. Terry:

Q. And were you aware of the ownership in that property, who owned the minerals in that property?

A. Well, we had to be explained to about the lifetime estate, and Mr. Zimmerman was still alive at that time, and so he owned half of the minerals, the Kaufmanns owned half of the minerals. When Mr. Zimmerman died then they explained to us that we would receive the other half.

[¶ 6] After settling on the Ranchester property, the Terrys notified Whitney. Whitney

2. The Ranchester property was owned by "Carl Kaufmann and Vera L. Kaufmann, husband and wife; Clifford C. Kaufmann and Rose Marie Kaufmann, husband and wife; and Carl A. Church, Jr. and Charlene Ann Church, husband and wife." We will refer to these owners as "the Kaufmanns."

entered into an agreement with the Kaufmanns to purchase the property. In the agreement, the Kaufmanns are identified as "Sellers." Whitney is identified as "Buyer." The Kaufmann/Whitney agreement referenced a life estate in one-half of the minerals in favor of Clyde Zimmerman and Gladys Glasby that burdened the Ranchester property. In the agreement, the Kaufmanns expressly represented that Gladys Glasby was deceased and that the life estate would terminate upon the death of Mr. Zimmerman.

[¶ 7] Closing of the transactions occurred on February 25, 1980. At the closing, the Kaufmanns executed a Warranty Deed conveying the Ranchester property to Whitney. Whitney, in turn, executed a Limited Warranty Deed conveying the Ranchester property to the Terrys. The Terrys signed a Warranty Deed conveying the Tongue River property to Whitney. At closing, the Kaufmanns received the balance of the $575,000 purchase price and the Terrys were paid, as "boot," the sum of $39,750, representing the difference in price between the Ranchester property they were receiving and the Tongue River property they were selling to Whitney.

[¶ 8] The Kaufmann Warranty Deed identified the Kaufmanns as "Grantors" and in the body of the deed, specified that the conveyance was "SUBJECT TO the reservation of coal, oil, gas and other minerals set forth in Exhibit 'A.'" Exhibit A provided a lengthy legal description and stated the reservation as follows:

EXCEPTING AND RESERVING, HOWEVER, to the Grantors and to their heirs and assigns, one-half of all coal, sub-bituminous coal, lignite, oil, gas, uranium, fissionable materials, and all other minerals of every kind and character, contained in or underlying said lands, together with the right to enter thereon for the purpose of drilling for or mining the said coal, oil, gas, uranium, fissionable materials and other minerals, and the right to use so much of the surface as may be necessary for such purposes, provided the owner of the surface is reasonably compensated for any damage done thereto.

The Warranty Deed from the Kaufmanns did not mention the Zimmerman life estate.

[¶ 9] In the Limited Warranty Deed from Whitney to the Terrys, Whitney is identified as "Grantor." The deed also contains an Exhibit A that is identical to the Exhibit A in the Kaufmann/Whitney Deed with two exceptions: the term "Grantors" is changed to "sellers," and there is a specific reference to the Zimmerman life estate. It is this deed that is at the center of the dispute between the parties.

[¶ 10] Three months after the closing, the Terrys executed an oil and gas lease for their mineral interest in the Ranchester property. They also executed a Ratification of Oil and Gas Lease that had previously been signed by Mr. Zimmerman. Through the years, the Terrys executed additional mineral leases for the Ranchester property. Mrs. Terry prepared and recorded Affidavits of Survivorship reflecting the deaths of Mr. Zimmerman and Ms. Glasby and the termination of their life estate in the minerals. There is no indication in the record that Whitney ever claimed any mineral interest in the Ranchester property.

[¶ 11] The first inkling that the Terrys had of questions regarding their mineral interest came from a source other than Whitney. Mrs. Terry testified:

Q. Let's talk about the case that's here today. What events caused you to initiate this quiet title action?

A. All right. Mr. Munson was an agent or he sold our lease to Elk Petroleum, and Elk Petroleum did some explorations and they were going to drag—on Friday they called and said: "We're going to drag a rig over on our six-mile area."

Q. Is the six-mile area part of the Ranchester property?

A. Yes, yes. For exploration purposes, and then their geologist called back and said: "We've hired a girl and she went deep into the records, and will you come in and talk to us about it?" So Clarence and I went in and talked to Richard Sweeney, the geologist, and his solution was: "Talk to someone from [Whitney] and they'll quiet the title."

Apparently, efforts to resolve the potential title problems were unsuccessful and the

Terrys filed a "Complaint to Quiet Mineral Title" against Whitney in Sheridan County district court. Whitney denied nearly all of the allegations of the Complaint and raised several affirmative defenses including an allegation that the Terrys' claim "is barred by the applicable statute of limitations."

[¶ 12] Prior to trial, the parties entered into a joint stipulation. In that stipulation, the parties agreed to the admissibility of several documents, including: The Contract between Whitney and the Terrys, the Agreement for Warranty Deed between the Kaufmanns and Whitney, the Kaufmann Warranty Deed to Whitney, and the Limited Warranty Deed from Whitney to the Terrys. Whitney also filed a motion in limine seeking to exclude other extrinsic evidence that the Terrys might attempt to introduce to interpret the Limited Warranty Deed. Whitney contended that the deed was unambiguous. The Terrys resisted the motion. They asserted that the deed was ambiguous and that extrinsic evidence was admissible to interpret the deed. The district court took the motion under advisement and trial proceeded. Whitney renewed its objection to specific extrinsic evidence throughout the trial. At the conclusion of the trial, the district court determined that the Limited Warranty Deed was ambiguous and, after considering the language of the deed and extrinsic evidence, quieted title to the minerals in the Terrys. Whitney filed a timely appeal.

### STANDARD OF REVIEW

[¶ 13] The district court held a bench trial in this case. Consequently, we apply the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is

clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Harber v. Jensen,* 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) quoting, *Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003). *See also Powder River Ranch, Inc. v. Michelena,* 2005 WY 1, ¶ 8, 103 P.3d 876, [879] (Wyo.2005).... The district court's conclusions of law are, however, subject to our *de novo* standard of review. *Powder River Ranch,* ¶ 8, 103 P.3d at [880]; *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, [681] (Wyo. 2003).

*Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

### DISCUSSION

[¶ 14] Whitney raises five issues in this appeal. All of those issues are premised upon Whitney's contention that the Limited Warranty Deed clearly and unambiguously specifies that Whitney reserved a one-half mineral interest in the Ranchester property. Whether the deed is ambiguous presents a question of law. *Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994). We give no deference to a district court's decision on an issue of law. *Id.* We determine whether a written contract term is ambiguous "by independently reviewing the disputed term in light of the actual language of the entire contract. A term is ambiguous if, considered in light of the plain language of the entire contract, it is susceptible to more than one reasonable meaning." *Smithco Eng'g v. International Fabricators,* 775 P.2d 1011, 1019 (Wyo.1989) (Golden, J., concurring) (internal citations omitted).

[¶ 15] The Limited Warranty Deed transferring the Ranchester property from Whitney to the Terrys states:

KNOW ALL MEN BY THESE PRESENTS:

That [Whitney], for good and valuable consideration does hereby grant, bargain,

sell and convey unto CLARENCE W. TERRY and PEGGY ANN TERRY, as tenants by the entirety, of Kirby Star Route, Sheridan, Wyoming 82801, all the real property situate in Sheridan County, State of Wyoming, described in Exhibit A attached hereto and made a part hereof, SUBJECT, HOWEVER, to the exceptions, restrictions, and reservations set forth in the Warranty Deed from Carl Kaufmann and Vera L. Kaufmann, husband and wife, Clifford C. Kaufmann and Rosemarie A. Kaufmann, husband and wife, and Carl A. Church, Jr. and Charlene Ann Church, husband and wife, **to the Grantor herein,** the easements and rights-of-way of record; to all mineral and oil royalty reservations or conveyances contained in prior instruments of record; and all existing mineral leases affecting said lands.

Grantor warrants title solely against the acts and deeds of **Grantor** and no other.

IN WITNESS WHEREOF, the **Grantor** has caused this instrument to be executed by its officials this 25 day of February, 1980.

(Emphasis added.) Exhibit A contained a lengthy property description and also stated:

EXCEPTING AND RESERVING, HOWEVER, to the **sellers** and to their heirs and assigns, one-half of all coal, sub-bituminous coal, lignite, oil, gas, uranium, fissionable materials, and all other minerals of every kind and character, contained in or underlying said lands, together with the right to enter thereon for the purpose of drilling for or mining the said coal, oil, gas, uranium, fissionable materials and other minerals, and the right to use so much of the surface as may be necessary for such purposes, provided the owner of the surface is reasonably compensated for any damage done thereto.

ALSO SUBJECT to that certain life estate now held by Clyde Zimmerman, as a result of the reservation set forth in the Warranty Deed from Clyde Zimmerman and Ada Zimmerman, husband and wife and Gladys Glasby, a single person, which reservation extends to the lands above described which are located in Township 57 North, Range 85 West of the 6th P.M., and the lands above described which are located in Sections 12 and 13, Township 57 North, Range 86 West of the 6th P.M.

(Emphasis added.)

[¶ 16] Whitney contends that the term "sellers," in the reservation clause at issue, unambiguously refers to Whitney. According to Whitney, the reference in the Limited Warranty Deed to the Zimmerman life estate is irrelevant to proper interpretation of the deed. Whitney asserts that after it conveyed the Ranchester property to Plaintiffs under the Limited Warranty Deed, "(1) the Terrys owned the surface estate in the Ranchester Property, (2) Whitney owned one-half of the mineral rights in the Ranchester Property, and (3) Kaufmann[s] owned one-half of the mineral rights in the Ranchester Property subject to Zimmerman's life estate." Under Whitney's interpretation, the Terrys did not receive any mineral interest in the Ranchester property.

[¶ 17] According to the Terrys, the term "sellers" in the reservation at issue did not refer to Whitney. It referred to the Kaufmanns. The reference to the Zimmerman life estate was included because it limited the mineral rights to the Ranchester property that the Terrys were receiving in the transaction. According to the Terrys, after the transaction was completed, they owned the surface estate and one-half of the mineral interest in the Ranchester property. Their mineral interest was burdened by the Zimmerman life estate. The Kaufmanns owned the other one-half of the mineral interest in the Ranchester property. Whitney did not retain any mineral interest in the Ranchester property.

[¶ 18] In interpreting a contract we must "give effect to each word if possible, and we strive to avoid construing a contract so as to render one of its provisions meaningless, because each provision is presumed to have a purpose." *Shaffer v. WINhealth Partners,* 2011 WY 131, ¶ 17, 261 P.3d 708, 713 (Wyo.2011) (internal quotation marks omitted). At trial, Whitney attempted to minimize the significance of the reference in the deed to the Zimmerman life estate and limit the focus of the district court to the

specific language in the reservation clause. Understandably, the district court balked:

> THE COURT: So that extra language that's subject to the life estate is just—I mean, it didn't need to be there, it's extra, didn't need to be there.

> [COUNSEL]: Whether it needed to be there or not, I don't think it's for us to say.

> THE COURT: It's in a critical document. If I'm going to give meaning to something, I have to .give meaning to everything, try to. Why is it there then?

> [COUNSEL]: It could be there just to fully explain the status of the ownership of the minerals and the surface on that property.

> THE COURT: Just: "Oh, by the way, a footnote here: There's a life estate hanging out there and it's just good to know"?

> [COUNSEL]: Full disclosure of what the status of the ownership is.

> But where this analysis ultimately gets us is that there was a reservation. We can't do as they ask and just pretend that those words don't exist, because they do.

> THE COURT: Well, you want me to pretend the second half doesn't exist, just the first half.

[¶ 19] The district court determined that the Limited Warranty Deed was ambiguous based upon its review of the entire document, including the reference to the Kaufmann Warranty Deed, the Zimmerman life estate, and the recitation in the Limited Warranty Deed that the conveyance was subject to "all mineral . . . reservations . . . in prior instruments of record." The district court explained:

> This deed has three fundamental reservations:

> 1. It specifically makes reference to "all the real property situate in Sheridan County, State of Wyoming, described in *Exhibit A attached hereto and made part hereof*" (emphasis added). Exhibit A contains two exceptions and reservations:

> i) "EXCEPTING AND RESERVING, HOWEVER, to the sellers and to their heirs and assigns, one-half of all coal," etc., and

> ii) "ALSO SUBJECT to that certain life estate now held by Clyde Zimmerman, as a result of the reservation set forth in the Warranty Deed from Clyde Zimmerman and Ada Zimmerman, husband and wife and Gladys Glasby, a single person, which reservation extends to the lands above described which are located in Township 57 North, Range 85 West of the 6th P.M. and the lands above described which are located in Sections 12 and 13, Township 57 North, Range 86 West of the 6th P.M."

> 2. The Limited Warranty Deed specifically makes reference to:

> "SUBJECT, HOWEVER, to exceptions, restrictions, and reservations set forth in the *Warranty Deed from Carl Kaufmann and Vera L. Kaufman[n], husband and wife, and Carl A. Church, Jr. and Charlene Ann Church, husband and wife,* to the *Grantor herein* " (emphasis added).

> The Warranty Deed referenced in the above language is the Warranty Deed from Kaufmanns to [Whitney] (Exhibit 6). Exhibit 6 utilizes an attached Exhibit A to describe the lands and is "SUBJECT TO the reservation of coal, oil, gas and other minerals set forth in Exhibit 'A' ". The referenced Exhibit A in turn contains the following reservation:

> "EXCEPTING AND RESERVING, HOWEVER, to the Grantors and to their heirs and assigns, one-half of all coal, etc." Nearly identical language as set forth in the Limited Warranty Deed except that it uses the term "Grantors" versus "sellers".

> It also makes no mention of the Zimmerman/Glasby life estate.

> 3. Finally, the Limited Warranty Deed includes subject to "the easements and rights-of-way of record; to all mineral and oil royalty reservations or conveyances contained in prior instruments of record; and all existing mineral leases affecting said lands."

> Attempting to give meaning to each of the reservations and applying the classic law school "bundle of sticks" analysis quickly makes the point. Starting with the con-

veyance between Kaufmanns and [Whitney]. Kaufmanns reserved one-half the minerals (Bundle 1) and conveyed the remaining sticks to [Whitney]. [Whitney] then conveys to Terrys with several reservations including the reservations of Kaufman[n] (Bundle 1), as well as, "all mineral and oil royalty reservations or conveyances contained in prior instruments of record" which could also include the prior reservation of Kaufman[n] (Bundle 1) and the Zimmerman/Glasby life estate (Bundle 2). Then Exhibit A again reserves one-half the minerals and addresses the Zimmerman/Glasby life estate (Bundle 2). Attempting to give meaning to the multiple reservations which appear to overlap and be repetitive prevents a clear and unambiguous determination as to what minerals were reserved. Accordingly, the language in the Limited Warranty Deed is ambiguous and the Court denies Defendant[']s Motion in Limine objecting to consideration of extrinsic evidence to determine the intent of the parties.

(Footnote omitted.) We are inclined to agree with the district court's analysis. Additionally, we conclude that the specific language of the reservation clause upon which Whitney relies is ambiguous.

[¶ 20] Whitney contends that "[n]one of the three reservations relied on by the Court make the language reserving one-half of the mineral rights to the seller ambiguous." According to Whitney:

The first reservation cited by the District Court has two parts. The first part provides that one-half of the mineral rights are reserved to Whitney. The second part, provides that the other one-half of the mineral rights are owned by Kaufmann subject to Zimmerman's life estate. These clauses are not obscure in their meaning, are not indefinite, and do not have a double meaning. They plainly state that Whitney reserves one half of the mineral rights and Kaufmann owns the other half.

A plain reading of the language of the reservation does not support Whitney's interpretation. The first part of the reservation does not mention Whitney, it uses the plural term "sellers." The second part of the reservation refers only to the Zimmerman life estate. It does not say that the Kaufmann mineral interest is burdened by the Zimmerman life estate. It does not even mention the Kaufmanns.

[¶ 21] In addressing the second reservation discussed by the district court, Whitney asserts:

The second reservation cited by the District Court provides that Whitney's conveyance of the Ranchester Property to the Terrys is subject to the reservations in the Warranty Deed from Kaufmann to Whitney. The effect of those words in the Limited Warranty Deed is that Whitney was not providing any *more* property to the Terrys than it received from Kaufmann. The Warranty Deed from Kaufmann to Whitney provides that Kaufmann is reserving one-half of the mineral rights in the Ranchester Property. Repeating in the Limited Warranty Deed that Kaufmann owns a one-half interest in the mineral rights does not render ambiguous the reservation of the other one-half interest in the mineral rights to Whitney.

(Emphasis in original.) We agree that the second reservation clearly and unambiguously reflects that the conveyance is subject to the Kaufmann reservation of a one-half mineral interest in the Ranchester Property. As noted by the district court, the reservation clause in the Kaufmann deed makes no mention of the Zimmerman life estate. Whitney's position in this case is that the Kaufmann mineral interest is burdened by the Zimmerman life estate. Based upon the language of the Kaufmann deed, it is difficult to ascertain how Whitney arrives at that conclusion. Additionally, Whitney's concession that the reservation clause could be viewed as a repetition of the Kaufmann reservation dovetails with the interpretation of the Limited Warranty Deed presented by the Terrys.

[¶ 22] The Terrys contend that the references in the Limited Warranty Deed to the Kaufmann reservation and the Zimmerman life estate are significant and necessary terms of the deed to reflect the mineral interest that the Kaufmanns were conveying and that the Terrys were receiving. The Kaufmanns were reserving a one-half inter-

est in the mineral estate and the Terrys were receiving a one-half mineral interest that was subject to the Zimmerman life estate. The Terrys assert that the term "sellers" refers to the Kaufmanns, not Whitney.

[¶ 23] Whitney's position is summed up in this excerpt from its brief:

> There is nothing obscure or indefinite about the language that reserved one-half of the mineral rights to Whitney. The Limited Warranty Deed does not contain a double meaning that is open to interpretation. It means what it says—one—half of the mineral rights in the Ranchester Property are reserved to the seller (Whitney).

Whitney employed this technique repeatedly at trial and continues that approach in this appeal. It consistently treats the term "sellers" contained in the reservation clause and "Whitney" as synonyms. It regularly adds the parenthetical (Whitney) after "sellers" even though "Whitney" is not identified in the reservation clause. Whitney routinely changes the plural term "sellers" that is contained in the reservation clause to the singular "seller" and provides no explanation for the change. Whitney has provided no authority governing contract interpretation that would allow adding words (Whitney) to the reservation clause or permit changing a plural word (sellers) to the singular form (seller). Most significantly, Whitney never explains how it reached the conclusion that the term "sellers" clearly and unambiguously refers to Whitney. When we review the entire document, as we are required to do, we cannot conclude that the reservation clause is unambiguous or that the term "sellers" clearly and unambiguously refers to Whitney.

[¶ 24] The term "sellers" is not defined in the Limited Warranty Deed. Whitney is consistently identified in the Limited Warranty Deed as "Grantor," not as "sellers." The deed states that the transfer to the Terrys is "SUBJECT, HOWEVER, to the ... reservations set forth in the [Kaufmann Warranty Deed] to the **Grantor** herein." (Emphasis added.) The deed states that "**Grantor** warrants title solely against the acts and deeds of **Grantor** and no other." (Emphasis added.) The deed concludes: "IN WITNESS WHEREOF, the **Grantor** has caused this instrument to be executed by its officials." (Emphasis added.) In the body of the deed the singular "Grantor" is always used to refer to Whitney. The plural "Grantors" is never used. The singular form of the noun "Grantor" is consistent with the recognition that Whitney is a corporation. By contrast, the reservation, which is at the heart of this dispute, uses the plural noun, "sellers:" "EXCEPTING AND RESERVING, HOWEVER, to the sellers . . . ." In sum, it is not at all clear that the terms "Grantor" and "sellers" are synonymous or that the term "sellers" refers to Whitney. The term "sellers" could also plausibly refer to the Kaufmanns. Because there is more than one reasonable interpretation, we conclude that the Limited Warranty Deed is ambiguous.

[¶ 25] After determining that the deed was ambiguous, the district court interpreted the deed utilizing the language of the deed and extrinsic evidence. The district court concluded that the parties intended, and the deed reflected, that Whitney did not reserve a mineral interest in the Ranchester property. We agree with the district court.

[¶ 26] In the basic transaction between the Terrys and Whitney, the Terrys were the sellers and Whitney was the buyer. The Terrys were selling their property to Whitney. The terms of the agreement were set forth in a Contract for Deed, dated December 17, 1979. In that document, Whitney is identified as "buyer." The Terrys are identified as "seller." The references are used consistently throughout the document. Whitney is never identified as a "seller" or "sellers."

[¶ 27] In the Kaufmann contract with Whitney, the Kaufmanns are identified as "sellers" and Whitney is identified as "buyer." The references are used consistently throughout that document. Whitney is never identified as a "seller" or "sellers."

[¶ 28] The Contract for Deed between the Terrys and Whitney makes it absolutely clear that Whitney was only to act as a conduit to facilitate the transfer of the exchange property:

> Buyer agrees that if Seller selects the exchange property and gives notice thereof

within the time provided, it shall purchase the selected exchange property and exchange the same for the above-described property. Any value of the selected exchange property over and above the purchase price for the above-described property as provided herein shall be paid by Seller, or in the event the selected exchange property has a value less than the purchase price for the above-described property, said difference in value shall be paid by Buyer unto Seller. Upon acquiring title to the selected exchange property, Buyer shall convey title thereto to Seller by special warranty deed and shall, at its sole expense, furnish a title insurance commitment sufficient to Seller insuring fee simple title to the exchange property in Buyer.

There is no language in the Contract for Deed reflecting any intent that Whitney would retain any interest in the exchanged property.

[¶ 29] Additionally, the course of conduct of the parties after completion of the sale is uniformly consistent with the Terrys' interpretation of the deed. Course of conduct evidence may properly be considered in interpreting an ambiguous contract. *B & R Builders v. Beilgard*, 915 P.2d 1195, 1198 (Wyo.1996). The Terrys acted at all times as the owners of the mineral estate that was burdened by the Zimmerman life estate. The Terrys executed and filed affidavits of survivorship reflecting termination of the Zimmerman life estate after Mr. Zimmerman died in 1988. They entered into several oil and gas lease agreements. They at all times acted as owners of the mineral estate. Whitney, on the other hand, did nothing. It took no action of any kind, until this lawsuit, to reflect that it claimed any interest in the mineral estate. The course of conduct evidence was properly relied upon by the district court to interpret the deed and supports the district court's decision.

[¶ 30] In addition to its general objection to the admissibility of extrinsic evidence, Whitney contends that evidence regarding the value of the properties was irrelevant. We review a district court's evidentiary rulings for an abuse of discretion.

*Cramer v. Powder River Coal, LLC*, 2009 WY 45, ¶ 22, 204 P.3d 974, 981 (Wyo.2009). The district court succinctly explained the relevance in its decision letter:

> [Whitney] served as a conduit to effectuate the like-kind exchange. Particularly, the exchanged properties were valued and "boot" was paid to equalize the difference in values. The values and consideration between the parties would not balance if one-half the minerals were not conveyed to Terrys. Stated in another way, [Whitney] would have received something for nothing should the one-half mineral interest been reserved by it.

We agree with the district court. The evidence was relevant.

[¶ 31] Finally, Whitney claims that the district court erred in failing to hold that the Terrys' claim was barred by the ten year statute of limitations applicable to claims to reform a contract. The applicability of a statute of limitations is a question of law that is reviewed *de novo*. *Ray v. St. Vincent Healthcare, Inc.*, 2006 WY 98, ¶ 8, 139 P.3d 464, 466 (Wyo.2006); *McCreary v. Weast*, 971 P.2d 974, 978 (Wyo.1999).

[¶ 32] Whitney's assertion that this is an action for reformation is tied to its contention that the reservation at issue was unambiguous and that the Terrys sought reformation based upon "mistake." Neither contention has merit. The deed is ambiguous, and the Terrys never sought to reform the deed because of mistake.

[¶ 33] The only evidence of "mistake" in the trial occurred during cross-examination of the Terrys by counsel for Whitney. In an apparent attempt to obtain a factual foundation for its statute of limitations claim, Whitney's counsel sought testimony from the Terrys that the term "sellers" was mistakenly used in the deed. Mrs. Terry testified that the term was "confusing."

> [COUNSEL]: Now, if you'll look at the last page of this deed, page number seven, where it says: "Excepting and reserving to the seller one half of the coal and other minerals"; do you see those words at the top?
>
> A: Yes.

. . .

Q: Well, do you believe that these words in the—on the last page of Exhibit 7, where it says wherein exception reserves to the seller one half of the minerals, do you believe those words are a mistake?

A: I think they're confusing.

Q: Well, when you took—when I took your deposition didn't you think that these words were a mistake? Do you recall discussing this with me when we took your deposition?

A: Yes. I thought they were con—I think they're confusing. I know what was said and they should have been—

Q: Do you recall that, in speaking to this particular clause, I asked you this question and you gave this answer: "Do you believe this clause was just a mistake?"

"Answer: Oh, I do."

"Question: Okay."

"Answer: I absolutely do."

A: Okay. The reason that I said that— can I explain?

THE COURT: Well, he gets to ask the questions. Your lawyer will have a chance to ask follow-up questions—

THE WITNESS: Okay, thank you.

THE COURT: So if he wants you to explain, he'll ask you to, but he's kind of in control of what's asked.

THE WITNESS: Okay. I still think it's confusing.

[COUNSEL]: Okay. Mrs. Terry, did—in your deposition did I ask those questions and did you give those answers?

THE WITNESS: Yes.

Counsel for the Terrys followed-up on redirect:

[COUNSEL]: All right. Your Honor, that's the same question [Counsel] just asked a few minutes ago. So back to the question: The first paragraph on the last page of Exhibit 7, where it says: "Excepting and reserving to the sellers."

THE WITNESS: I thought that they meant to the Kaufmanns, because the Kaufmanns reserved half and sold to [Whitney] to give to us half.

[COUNSEL]: All right. Now let's look at the second paragraph.

THE WITNESS: And the same thing: Mr. Zimmerman, when he died, we were to receive half.

[COUNSEL]: Okay. I have no further questions for Mrs. Terry.

[¶ 34] Mr. Terry also denied that use of the term "sellers" was a mistake. This short excerpt from Mr. Terry's cross-examination sums up the Terrys' position that the term "sellers" referred to the Kaufmanns and that it would be a mistake for the term "sellers" to be read as "Whitney."

Q: If you'll turn to the last page of the document, I'll read just a portion of a clause and ask you a question, if I may. It says: "Excepting and reserving, however, to the sellers and to their heirs and assigns one half of all coal, sub-bituminous coal," and it goes on to describe other minerals. Do you see those words?

A: Yes.

. . .

Q: Do you believe that those words that I read out of this deed, where: "Excepts and reserves minerals to the seller" is a mistake?

A: Is the seller in that case the Kaufmanns?

Q: No, the seller would be [Whitney].

A: Selling it to who?

Q: Selling it to you and your wife.

A: They weren't supposed to even be involved in all that, on the Kaufmann place. Well, they had to be, I guess, but it wasn't our intention that—

Q: Well, do you believe that those words in the deed are just a mistake?

A: I'd have to say that, because they were just—they were just going to pick it up, buy it, and that was it and—but I realize they had to make a—they had to probably mention the minerals and everything, but I just don't understand why they took it.

Q: Well, so to make my question a little more clear, do you believe that this deed, which is Exhibit 7, contains a mistake

when it excepts and reserves any minerals at all through [Whitney]?

A: I hope it was a mistake.[3]

[¶ 35] Both parties in this action were merely asking the district court to interpret the deed. Disagreement as to the meaning of a term in an agreement does not convert a quiet title action into an action for reformation. The Terrys' quiet title action is not barred by the statute of limitations.

 [¶ 36] In conclusion, we would reiterate that the fundamental goal of contract interpretation is to determine the intent of the parties. *Mullinnix*, ¶ 22, 126 P.3d at 919. The district court properly determined that the Limited Warranty Deed was ambiguous and did not err in admitting extrinsic evidence to interpret the deed. The language of the Limited Warranty Deed and the properly admitted extrinsic evidence support the district court's determination that Whitney did not reserve any mineral interest in the Ranchester property.

[¶ 37] Affirmed.

HILL, Justice, dissenting, in which KITE, Chief Justice, joins.

[¶ 38] I respectfully dissent from the majority opinion in this case. The Whitney/Terry deed clearly and unambiguously reserves a one-half mineral interest to the seller, Whitney. That reservation may, very well, have been a mistake. However, that mistake should not be corrected by torturing our rules of contract interpretation to essentially remove the reservation from the deed and allow the one-half mineral interest to be conveyed to the buyers, the Terrys.

[¶ 39] Whitney conveyed the Ranchester property to the Terrys in a Limited Warranty Deed dated February 25, 1980, which stated, in relevant part:

> ... [Whitney] ... does hereby grant, bargain, sell and convey unto [the Terrys] ... all of the real property situate in Sheridan County, State of Wyoming, described in Exhibit A attached hereto and made a part hereof, SUBJECT,

HOWEVER, to the exceptions, restrictions, and reservations set forth in the Warranty Deed from [the Kaufmanns] to the Grantor herein, the easements and rights-of-ways of record; to all mineral and oil royalty reservations or conveyances contained in prior instruments of record; and all existing mineral leases affecting said lands.

> Grantor warrants title solely against the acts and deeds of Grantor and no other.

Exhibit A included a legal description of the Ranchester property, the reservation specifically at issue here, and a reference to the Zimmerman life estate:

> EXCEPTING AND RESERVING, HOWEVER, to the sellers and to their heirs and assigns, one-half of all coal, ... oil, gas, ... and all other minerals of every kind and character, contained in or underlying said lands.

> ALSO SUBJECT to that certain life estate now held by Clyde Zimmerman, as a result of the reservation set forth in the Warranty Deed from [Zimmerman and others] which reservation extends to the lands above described.

[¶ 40] The Whitney/Terry deed, therefore, included a reservation to the sellers of a one-half mineral interest and gave notice of reservations and exceptions contained in two other deeds—the Kaufmann/Whitney deed and the Zimmerman/Kaufmann deed. The Kaufmann/Whitney deed reserved to the Kaufmanns one-half mineral interest. The Zimmerman/Kaufmann deed conveyed the Ranchester property to the Kaufmanns and stated the following with regard to the reserved life estate:

> RESERVING, HOWEVER, to the Grantors [Zimmerman, et al.] and to the survivor of them, for the term of their natural lives, one-half of all coal, oil, gas and other minerals contained or underlying said lands[.]

[¶ 41] A deed is a contract and we employ our typical contract interpretation principles to interpret it. *Ecosystem Resources, LC v.*

---

**3.** This exchange provides another example of the approach taken by Whitney as described in paragraph 23 of this opinion.

*Broadbent Land & Resources LLC,* 2007 WY 87, ¶ 9, 158 P.3d 685, 688 (Wyo.2007); *Carlson v. Flocchini Inv.,* 2005 WY 19, ¶ 15, 106 P.3d 847, 854 (Wyo.2005).

> In considering the meaning of a contract, we focus on the parties' intent. If possible, we determine their intent from the language used in the agreement. Where the language is clear and unambiguous, we limit our inquiry to the four corners of the document, giving the words contained therein their ordinary meaning. The parties are free to incorporate within their agreement whatever lawful terms they desire, and we are not at liberty, under the guise of judicial construction, to rewrite the agreement. It is only when a contract is ambiguous that we construe the document by resorting to rules of construction. A contract is ambiguous if indefiniteness of expression or double meaning obscures the parties' intent.

*Davidson Land Co. LLC v. Davidson,* 2011 WY 29, ¶ 14, 247 P.3d 67, 71–72 (Wyo.2011) (citations omitted). We consider parol evidence to construe a deed only if it is, first, found to be ambiguous on its face. *Belden v. Thorkildsen,* 2007 WY 68, ¶ 16, 156 P.3d 320, 324 (Wyo.2007). In other words, parol evidence may not be used to create an ambiguity. *Schulz v. Miller,* 837 P.2d 71, 75 (Wyo. 1992).

[¶ 42] The district court stated that "[a]ttempting to give meaning to the multiple reservations which appear to overlap and be repetitive prevents a clear and unambiguous determination as to what minerals were reserved." The majority agreed with this assessment. "[I]f a grantor intends to keep some property interest when conveying the property, he *'reserves'* that interest." *Sunshine Custom Paints & Body, Inc. v. South Douglas Highway Water & Sewer Dist.,* 2007 WY 206, ¶ 18, 173 P.3d 398, 403 (Wyo.2007) (emphasis in original). The Whitney/Terry deed, therefore, contains only one true reservation—the reservation of one-half minerals to the sellers in Exhibit A. The remainder of the exceptions in the deed simply gave notice of other encumbrances by stating that the conveyance was "subject to" the one-half

mineral interest the Kaufmanns had already reserved, other reservations of record and the Zimmerman life estate.

[¶ 43] The district court and, apparently, the majority ascribe significance to the deed's reference to the Zimmerman life estate and indicate that somehow renders the deed ambiguous. The Terrys maintained that the deed would not have referred to the life estate unless the parties intended the life estate to encumber the one-half interest that supposedly transferred to them. It is axiomatic that neither Whitney nor the Terrys had the authority to affect, in any way, the encumbrances or prior reservations already extant in the chain of title. Thus, Whitney and the Terrys could not "assign" the life estate to either half of the minerals in the Whitney/Terry deed. The only legal purpose for referring to the life estate was to give notice that the life estate was part of the chain of title. Furthermore, delving into the issue of which part of the mineral estate the life estate burdened ignores our precedent which clearly states that quiet title actions involve and bind only the parties before the court. *Ultra Resources, Inc. v. Hartman,* 2010 WY 36, ¶¶ 52–53, 226 P.3d 889, 911–12 (Wyo.2010). The life tenants are not involved in this matter and, from the record, it appears they are deceased. As such, the life estate does not affect the only true reservation in the Whitney/Terry deed—the reservation of one-half mineral interest to the sellers.

[¶ 44] The majority rules that the deed is ambiguous because the reservation in Exhibit A uses the word "sellers" instead of the word "grantor" like in the body of the deed. In making that ruling, the majority apparently accepted the Terrys' argument that the term "sellers" refers to the Kaufmanns. While it is not artful to use two different terms to identify a party in a deed, there is no question that Whitney was the seller in the deed. In fact, the granting clause states: "[Whitney] ... does hereby grant, bargain, *sell* and convey unto [the Terrys] ... all of the real property situate in Sheridan County, State of Wyoming, described in Exhibit A." To suggest that the Kaufmanns, who were

not even parties to the deed, were the sellers defies logic.

[¶ 45] The majority also finds ambiguity in the use of the plural "sellers" since Whitney should have been referred to in the singular and indicates that this reinforces the argument that the reference to sellers is to the Kaufmanns. In considering this argument, it is important to remember that the actual grantor in the deed was Peter Kiewit Sons, Inc. Obviously, Peter Kiewit Sons, Inc. is a corporation and should have been referred to in the singular; however, the name of the corporation "Peter Kiewit Sons," stated in the plural, lends itself to the plural reference. Reading the inadvertent use of the plural to refer to Peter Kiewit Sons makes much more sense than reading that reference to mean, as the Terrys advocate, the Kaufmanns who were not even parties to the deed.

[¶ 46] If we ignore, as the majority does, that the reservation in Exhibit A uses the active voice, i.e., the sellers "reserve," and interpret the reservation to the sellers as simply giving notice of the Kaufmanns' prior reservation of their one-half mineral interest, we encounter another deed interpretation problem. Such an interpretation results in there being two provisions in the deed which give notice of the Kaufmanns' reservation— the first one in the granting clause where specific reference is made to the reservation in the Kaufmann/Whitney deed and the second in Exhibit A where the sellers reserve the mineral interest. This interpretation violates a basic principle of contract interpretation, which requires that we give separate effect to each provision so as to avoid rendering a provision meaningless. *Shaffer v. WINhealth Partners*, 2011 WY 131, ¶ 17, 261 P.3d 708, 713 (Wyo.2011).

[¶ 47] I, therefore, disagree with the district court's and majority's conclusion that the deed is ambiguous. There is nothing indefinite or confusing in the deed language that obscures the parties' intent with regard to the meaning of the reservation—Whitney, the only "seller" involved in the Whitney/Terry deed, reserved one-half mineral interest to itself. The majority improperly stretches the language and relies on implausible assumptions to conclude the deed is ambiguous.

[¶ 48] Here, the *seller,* which unquestionably was Whitney within the context of the Whitney/Terry deed, *reserved* one-half the minerals in the Ranchester property. The majority concludes, completely contrary to the deed language, that the parties actually intended to *convey* one-half mineral interest to the *buyers.* Similarly, the Terrys' contention that the reference to sellers in the deed was to the Kaufmanns makes no sense because the Kaufmanns were not parties to this deed and, therefore, could not reserve anything in it. The district court and majority improperly used parol evidence to contradict the terms of the contract. *See, Bixler v. Oro Management, LLC*, 2004 WY 29, ¶ 20, 86 P.3d 843, 850 (Wyo.2004); *Schulz*, 837 P.2d at 75.

[¶ 49] Another problem is that much of the evidence and testimony offered by the Terrys at the trial and relied upon by the district court in reaching its decision pertained to the Terrys' subjective intent with regard to the transaction. Peggy Terry, Clarence Terry, and their attorney testified that it was always the parties' intent that Whitney simply act as a conduit in the like-kind exchange and transfer whatever interest it received from the Kaufmanns to the Terrys. The Terrys stated that they were to obtain the one-half mineral interest in the property. The district court found Ms. Terry's testimony particularly credible. Regardless of her credibility, we have repeatedly stated that "the parties' statements of what they intended the contract to mean are not admissible" to interpret deed language. *Hickman v. Groves*, 2003 WY 76, ¶ 13, 71 P.3d 256, 260 (Wyo.2003); *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co.*, 2008 WY 101, ¶ 17, 191 P.3d 125, 131 (Wyo.2008). Thus, the parties' statements as to their subjective intent were not relevant or admissible under any circumstances to interpret the deed.

[¶ 50] The majority incorrectly applies our rules of deed interpretation to reach a desired result, that being the implementation of the parties' overall intent without regard for the deed language. I understand that

sentiment; in fact, I would agree that, looking at the inadmissible parol evidence of the overall transaction, Whitney and the Terrys probably intended that the Terrys obtain ownership of the one-half mineral interest. However, that unwritten intent is directly contrary to the language they used in the deed. As such, they obviously made a mistake in drafting the deed. The legal avenue to correct a mutual mistake in a deed is to bring an action to reform the deed.

[¶ 51] "Reformation is an equitable remedy available in cases where a mistake in the drafting of the written contract makes the writing convey the intent or meaning of neither party to the contract." *Ohio Cas. Ins. Co. v. W.N. McMurry Const. Co.*, 230 P.3d 312, 320 (Wyo.2010); *Hutchins v. Payless Auto Sales, Inc.*, 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002). "The remedy is appropriate when a written instrument does not accurately memorialize the parties' agreement." *Sanders v. Sanders*, 2010 WY 77, ¶ 12, 234 P.3d 343, 348 (Wyo.2010). A party seeking to reform an instrument must demonstrate by clear and convincing evidence: "(1) a meeting of the minds—a mutual understanding between the parties—prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake." *Id.* This is exactly what the Terrys are claiming in this case-the parties had agreed that the Terrys would receive the mineral interest and the deed actually executed by Whitney did not conform to that understanding as a result of a mutual mistake. If we condone use of parol evidence to "interpret" a contract to correct an obvious mistake in the instrument, there will no longer be any need for the remedy of reformation.

[¶ 52] The legal concept of reformation has been analyzed in cases remarkably similar to the present one. In *Town of Glenrock v. Abadie*, 71 Wyo. 414, 259 P.2d 766 (1953), Engelking agreed to sell certain property to Skinner, while reserving one-half of the mineral interest. When he executed the deed; however, he failed to reserve the mineral interest. Skinner then entered into an agreement to sell the property to the Town

of Glenrock. The agreement stated that one-half of the mineral rights had been reserved by Engelking and that the Town would be receiving only one-half of the mineral rights. Skinner then executed a warranty deed to the Town without reserving any mineral rights. After he had already transferred his interest in the property to the Town, Skinner gave Engelking a deed purporting to convey to him one-half of the minerals. Later, the Town conveyed back to Skinner one-half of the mineral interest. *Id.* at 766–68. In a subsequent quiet title action, the Town sought a declaration of its ownership.

[¶ 53] We determined that a mistake had been made by failing to reserve Engelking's mineral interest, and that "[s]uch an action is an action to correct or reform a deed." *Town of Glenrock*, 259 P.2d at 770. A reformation claim was, however, barred by the applicable statute of limitations because the limitations period began to run upon the recording of the deed and over thirty years had passed before the action to recover the mistakenly conveyed interest was commenced. *Id.* at 770–72. The only substantive difference between the case at bar and *Town of Glenrock* is that here a reservation was allegedly mistakenly included rather than omitted. *See also*, *Sanders*, ¶¶ 11, 20, 234 P.3d at 346–49 (discussing plaintiffs' efforts to reform a deed to remove a joint tenant whom they claimed was only intended to have survivor rights and no right to present possession of the property and holding that reformation was not proper because naming the defendant as a joint tenant in the deed was not a mutual mistake, even though the parties did not actually intend to give the defendant all of the rights of a joint tenant); *Samuel Mares Post No. 8, American Legion, Dept. of Wyoming v. Board of County Commissioners of County of Converse*, 697 P.2d 1040, 1042 (Wyo.1985) (addressing the Legion's contention that it had conveyed the property "to be used solely as an airport and if the property ever ceased to be used as such, the land would revert back to the Legion," and concluding that, even if that was the parties' intent at the time of conveyance, the deed was unambiguous, did not contain a condition subsequent, and could not be re-

formed some 50 years later to include such a condition).

[¶ 54] In this case, the Terrys essentially sought to remove the mistaken reservation of a one-half mineral interest to Whitney. That is a classic reformation action. The general ten-year statute of limitations applies to actions to reform a deed, and the limitations period began to run when the deed was recorded. Wyo. Stat. Ann. § 1–3–109 (Lexis-Nexis 2011).[4] *See also, Samuel Mares Post No. 8,* 697 P.2d at 1042; *Town of Glenrock,* 259 P.2d at 770–71. The Whitney/Terry deed was recorded on February 25, 1980; consequently, the limitations period on any claim for reformation or correction of the mistaken reservation had expired when the Terrys' filed their quiet title action in 2009. I would conclude that the district court erred by saving the Terrys from the reformation statute of limitations by improperly using deed interpretation principles to completely remove a mistaken, but clear, reservation of mineral interest.

---

**4.** Section 1–3–109 states: "An action for relief, not hereinbefore provided for, can only be brought within ten (10) years after the cause of action accrues."